STATE OF NORTH CAROLINA v. CLIFTON HAROLD PEARSON, JR.

No. COA96-365

(Filed 18 March 1997)

**1. Searches and Seizures § 82 (NCI4th)—"pat-down" search—routine traffic stop**

Officers had a reasonably articulable suspicion that defendant might be armed and dangerous so that the officers could make a pat-down search of defendant for weapons during a routine traffic stop where defendant had an odor of alcohol and acted nervous and excited while in the first officer's patrol car; defendant continued to act nervous and excited after a second officer arrived on the scene; and there were inconsistencies in defendant's statements and his passenger's statements concerning their whereabouts on the previous evening.

**Am Jur 2d, Searches and Seizures §§ 51, 78, 172, 191.**

Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.

Furtive movement or gesture as justifying police search. 45 ALR3d 581.

2. **Searches and Seizures § 58 (NCI4th)— pat-down search— discovery of drugs—immediately apparent rule—not invasion of privacy**

There was no invasion of defendant's privacy beyond that authorized by an officer's pat-down search of defendant for weapons during a traffic stop where the officer felt a hard object in defendant's crotch area which was not a part of his anatomy; the officer immediately concluded that the object was narcotics based on his experience and training, defendant's nervousness, and defendant's response that he did not know what the object was; and the search was no more intrusive than necessary as the object and its location made its identity immediately apparent.

Am Jur 2d, Searches and Seizures § 51.

Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.

Furtive movement or gesture as justifying police search. 45 ALR3d 581.

Appeal by defendant from judgment entered 22 January 1996 by Judge Melzer A. Morgan, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 15 January 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General John J. Aldridge, III, for the State.*

*Walter L. Jones for defendant-appellant.*

WALKER, Judge.

Defendant was indicted on charges of trafficking in cocaine by possession of 28 or more grams but less than 200 grams, possessing with intent to sell and deliver cocaine, possessing cocaine and trafficking in cocaine by transporting 28 or more grams but less than 200 grams. Defendant pled guilty to all charges pursuant to a plea arrangement which provided for the dismissal of the charges of possession with intent to sell and deliver cocaine and possession of cocaine.

STATE v. PEARSON

[125 N.C. App. 676 (1997)]

Two witnesses testified for the State at defendant's suppression hearing. The first witness was Patrolman Timmy Cardwell, who testified to the following: On 12 October 1994 he was traveling south on Interstate 85 in Greensboro, when he noticed an automobile drifting back and forth within its lane and traveling below the posted speed limit. He stopped the vehicle as a result of these observations. When Cardwell approached the vehicle, he found it to be operated by defendant and also occupied by a female, later determined to be defendant's fiancee. Defendant presented him with a North Carolina driver's license and registration identifying defendant as owner of the vehicle. He then asked defendant to exit the vehicle and come back to the patrol car with him.

Cardwell detected an odor of alcohol on defendant, who admitted he had consumed a couple of beers. After observing defendant, Cardwell concluded that defendant was not impaired by alcohol and described his demeanor as "a little nervous."

Defendant advised Cardwell that he and his fiancee were having some problems and had left Charlotte the previous night to spend time with defendant's family near the Virginia state line. Cardwell then left defendant in his patrol car and went to speak with defendant's fiancee. She told Cardwell that they had been to New York the previous night, had spent one night with defendant's parents, and were on their way home.

Cardwell then returned to his patrol car where he contacted Trooper W.J. Gray and asked him to come to the scene. Cardwell then issued defendant a warning ticket and asked defendant if he could search the vehicle. Defendant agreed and signed a consent to search form. When Gray arrived, Cardwell explained to Gray what was going on and asked Gray to pat down defendant for any weapons. While beginning to search the vehicle, Cardwell was alerted by Gray that he had discovered a hard object, foreign to defendant's anatomy, in defendant's crotch area. He observed Gray remove the object which was later determined to be 134.4 grams of crack cocaine and 5 grams of marijuana.

Trooper Gray testified to the following: On 12 October 1994, he responded to Cardwell's call to meet him at the scene. When he arrived, Cardwell told him that he was going to search the vehicle and asked Gray to frisk defendant for weapons. Defendant appeared to be very nervous and excited. During the pat down search, Gray felt a large object foreign to defendant's anatomy in the crotch area and

immediately suspected some type of narcotics. Defendant continued to act very excited and Gray requested Cardwell's assistance. Based on his experience, Gray knew it was common for males to transport drugs in their crotch areas.

The trial court denied defendant's motion to suppress and he now argues that the trial court erred by finding that his consent to search his vehicle also included consent to search his person outside the vehicle.

[1] Although a routine traffic stop does not justify a protective search for weapons in every instance, a police officer is permitted "to conduct a 'pat-down' for weapons once the defendant is outside the automobile, and if the circumstances give the police reasonable grounds to believe that the defendant may be 'armed and dangerous.'" *State v. McGirt*, 122 N.C. App. 237, 239, 468 S.E.2d 833, 835 (1996) (*quoting Pennsylvania v. Mimms*, 434 U.S. 106, 112, 54 L. Ed. 2d 331, 337 (1977)). As in *McGirt*, the sufficiency of the nature of the stop has not been raised by defendant as a basis to support his motion to suppress. Further, this Court in *State v. Sanders*, 112 N.C. App. 477, 481, 435 S.E.2d 842, 845 (1993) (*quoting State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982)), stated:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous...he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him.

Here, the trial court found that defendant had an odor of alcohol, acted nervous and excited while in the patrol car with Cardwell, and continued to act nervous and excited after Gray arrived on the scene. The trial court also found inconsistencies in the statements between defendant and the passenger concerning their whereabouts on the previous evening. As such, the totality of these circumstances were sufficient to support a reasonably articulable suspicion on the part of the two officers that defendant may be armed and dangerous and were sufficient to justify a pat down search of his person.

[2] We must further consider whether there was an invasion of defendant's privacy beyond that authorized by the search for

weapons. In *Minnesota v. Dickerson*, *508* U.S. 366, 375, 124 L. Ed. 2d 334, 346 (1993), the Supreme Court stated:

> If a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Further, this Court noted that our Supreme Court in *State v. White*, 322 N.C. 770, 370 S.E.2d 390, *cert. denied*, 488 U.S. 958, 102 L. Ed. 2d 387 (1988), held that in the context of the plain view exception the term "immediately apparent" is satisfied if the officer has probable cause to believe that what he has come upon is evidence of criminal conduct. *State v. Wilson*, 112 N.C. App. 777, 782, 437 S.E.2d 387, 389-90 (1993).

While conducting the pat down for weapons, Trooper Gray felt a hard object in defendant's crotch area which was not part of his anatomy. Based on his experience and training, defendant's nervousness, and his response that he did not know what the object was, Gray immediately concluded that the object was narcotics. Under these circumstances, Gray had probable cause to believe that the object was narcotics and his search was no more intrusive than necessary as the object and its location made its identity immediately apparent. *See also*, *State v. Whitted*, 112 N.C. App. 640, 436 S.E.2d 275 (1993) (Upholding the search of an individual when officer felt a "pebble" during the pat down frisk of defendant, and because of the surrounding circumstances believed it to be crack cocaine.)

Having determined that sufficient reasons existed to pat down defendant which led to the discovery of the cocaine and marijuana, we need not reach the question of whether defendant's consent to a search of his vehicle extended to a search of his person.

We find the trial court correctly denied defendant's motion to suppress.

Affirmed.

Judges LEWIS and MARTIN, Mark D. concur.