No. 74,601

STATE OF KANSAS, *Appellee,* v. VERNON WONDERS, *Appellant.*

(952 P.2d 1351)

Opinion filed January 23, 1998.

*Jean K. Gilles Phillips,* special appellate defender, argued the cause, and *Patrick Dunn,* student intern, and *Steven R. Zinn,* deputy appellate defender, were with her on the brief for appellant.

*Mary A. McDonald,* county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with her on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: In this case of first impression involving the Fourth Amendment to the United States Constitution, we must determine whether Kansas should adopt the "plain feel" corollary of the plain view exception to the search warrant requirement. If we do, the question then becomes whether substantial competent evidence exists to uphold the trial court's ruling that three baggies of marijuana discovered in Vernon Wonders' pocket were immediately apparent to a law enforcement officer conducting a properly authorized pat-down search of Wonders.

Wonders appealed his bench trial convictions of possession of marijuana, K.S.A. 1993 Supp. 65-4127b(a)(4), and possession of cocaine, K.S.A. 1993 Supp. 65-4127a(a), to the Court of Appeals. The panel reversed his convictions, finding the search exceeded the scope of a *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), search. 23 Kan. App. 2d 287. We granted the State's petition for review.

*Factual statement*

On March 7, 1994, Harvey County Deputy Sheriff Kurt Ford legally stopped a vehicle driven by Albert Garcia for failing to properly use a turn indicator. There were three passengers in the vehicle. Deputy Ford detected the odor of alcohol emanating from the vehicle when he spoke to Garcia and asked him to exit the vehicle to perform sobriety tests. After Deputy Ford was satisfied that Garcia was not legally intoxicated, Ford told Garcia he was free to leave but asked him whether his vehicle contained any weapons or contraband. Garcia replied that it did not and consented to a search of his vehicle.

Deputy Ford instructed the three passengers to exit the vehicle. Ford's search revealed a hand scale, zigzag rolling papers, and two pipes emitting an odor of burnt marijuana. Based upon his training and experience, Ford testified he believed the items to be illegal drug paraphernalia.

Deputy Ford had 6 years of field experience dealing with drugs and drug paraphernalia and had made numerous drug-related arrests while serving as a law enforcement officer. Ford had received training in drug detection during continuing education courses and had served as the Harvey County Sheriff's Drug Abuse Resistance Education (DARE) officer.

After finding the alleged drug paraphernalia, Ford decided to pat down each occupant of the vehicle, particularly because one of the passengers, Jason Beard, was known to Ford from prior contacts and was considered a possible danger. He said his primary purpose in conducting the pat-downs was to search for weapons but admitted he was aware of the possibility of finding other items based on the presence of drug paraphernalia in the car.

While searching Wonders, one of the passengers, Ford felt a bulge in Wonders' left front jeans pocket. Ford passed over the bulge and completed a full pat-down before returning to the bulge. Ford testified that when he first patted the bulge, it was immediately apparent to him that it was a bag of marijuana in the pocket. Ford returned and touched the pocket while asking Wonders about its contents. When Wonders did not respond, Ford reached in and removed rolling papers and three baggies of marijuana.

Wonders was arrested, and a subsequent search of his person at the jail during booking revealed a plastic bag in his shirt pocket containing white rocks of crack cocaine.

At his preliminary hearing, Wonders challenged several aspects of the search which produced the contraband evidence. Wonders first questioned whether Ford had an articulable suspicion to detain him. He then asserted that Ford did not have a reasonable fear for his safety in order to justify the pat-down searches. Finally, he alleged Ford exceeded the proper scope of a pat-down search by reaching into his pocket after knowing it did not contain a weapon.

Deputy Ford testified at the preliminary hearing and related the events leading up to the pat-down search. He told the court he discovered marijuana in Wonders' jeans pocket, placed him under arrest, and subsequently discovered the rocks of crack cocaine.

During cross-examination, Wonders' counsel questioned Ford about the setting of the search, Ford's prior knowledge of Wonders, and the demeanor of the occupants in an attempt to establish that Ford had no reason to fear for his safety. When briefly asked about the pat-down itself, Ford answered, "[W]hat I did feel in his pants pocket was a bulge, and I did at that time ask Mr. Wonders what was in his pocket, there was no reply, and that's when I did locate the marijuana in his pocket."

Although most of the redirect examination focused on establishing that Ford had reason to be apprehensive of Beard, the State asked Ford whether he had an idea of what the bulge was when he found it. Ford replied, "Initially, I did feel it to be baggies of content." Ford was not questioned further regarding the actual pat-down at the preliminary hearing.

The trial court bound Wonders over on the charges because the evidence clearly indicated he had been in possession of illegal substances. The court further recognized that a search and seizure issue existed, but pointed out that the purpose of the hearing was to determine probable cause, not to resolve every possible search and seizure issue. The court ruled the search and seizure issue should properly be addressed in a motion to suppress and it would be unfair to expect the State to respond to such issues at the preliminary hearing.

Wonders filed a motion to suppress which generally alleged the stop, search, and arrest of his person were illegal and all physical evidence, statements by Wonders, and observations of law enforcement officers obtained as a result should be suppressed.

At the hearing on the motion to suppress, Ford was again questioned about the events leading up to the search of Wonders and his reasons for conducting a pat-down search of the vehicle's occupants. He stated he knew by experience what a bag of marijuana felt like and it had a consistent feel, which he could not put in words. Ford testified that when he first felt the bulge in Wonders' pocket with the palm of his hand, he believed it to be a baggie of marijuana. He stated he did not manipulate the bulge to discover what it was because "[i]t was immediately apparent to me." Ad-

ditionally, Ford reported he gave Wonders an opportunity to explain the bulge before removing what he felt sure was marijuana.

Prior to cross-examination, the court questioned Ford about the clothing Wonders had been wearing during the search and established that the contraband was discovered in the front pocket of Wonders' jeans. Wonders' counsel then quizzed Ford about the reasons for the pat-down search and confirmed that no weapon was found during the pat-down of Wonders. The entire search took 10 to 12 seconds, with a 3-second touch when Ford returned to Wonders' jeans pocket where he had previously felt the bulge. Ford said he went inside the pocket after asking Wonder what it was.

Following cross-examination, the court inquired about the second, 3-second pat-down of Wonders' pocket. Ford responded that he had not squeezed or manipulated the object in the pocket and had been able to tell the size of the object from patting the outside of the pocket.

In a nine-page written opinion, the trial court denied Wonders' motion to suppress, finding that the search and seizure of Wonders was lawful. The court pointed out that the United States Supreme Court had recognized the "plain feel" corollary to the plain view exception to the search warrant requirement in *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993), although it had declined to apply the exception under the facts of that case. Distinguishing the facts of *Dickerson*, the trial court focused on the fact that Ford immediately knew the bulge was marijuana and he had not engaged in the squeezing, sliding, or manipulating that had been prohibited by *Dickerson*.

The trial court found it to be of critical importance that Ford was an experienced officer with training and practical experience from numerous arrests involving marijuana. The trial judge went on to specifically state:

"In order for the Court to grant the motion to suppress, I would have to find that the testimony of the officer lacked credibility when he stated that it was immediately apparent to him when he was patting down the defendant that the bulge in his front pocket was a baggie of marijuana. I would likewise have to discredit his testimony that a baggie of marijuana in this situation has a 'consistent

feel.' Given the training and experience of the officer, the Court cannot do this. If the arresting officer were new to his vocation or lacked experience and training in handling drug arrests, this would be an entirely different case. Here the officer is experienced and trained, and has had extensive contact with substances such as this in the course of his regular duties. Under all of the circumstances of the case, I find his testimony to be credible and I am satisfied that the bulge was apparent to the officer as marijuana in a baggie when he was patting down the defendant for weapons."

Wonders was subsequently convicted in a bench trial of possession of marijuana and cocaine. Wonders appealed to the Court of Appeals and argued the search violated his right against unreasonable searches and seizures because no reasonable suspicion existed to conduct a pat-down search and the search exceeded the scope of a permissible *Terry* search. Wonders did not challenge the initial stop of the vehicle, the DUI investigation, or the search of the car.

The Court of Appeals first ruled Ford had an articulable suspicion that Wonders was involved in criminal activity after discovering drug paraphernalia inside the vehicle. The court then found Ford reasonably feared for his safety after finding evidence of drug activity in the vehicle such that a pat-down search of the occupants for weapons was warranted. Next, the court decided that recognition of the plain feel exception to the Fourth Amendment search warrant requirement recognized by the United States Supreme Court in *Dickerson*, 508 U.S. 366, was consistent with this court's interpretation of § 15 of the Kansas Constitution Bill of Rights.

After reaching these conclusions, the Court of Appeals found the pat-down search which produced the marijuana exceeded the scope of a permissible *Terry* search. We granted the State's petition for review.

### Standard of Review

When a motion to suppress evidence is filed, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *State v. Damm*, 246 Kan. 220, 222, 787 P.2d 1185 (1990) (citing *Mincey v. Arizona*, 437 U.S. 385, 390-91, 57 L. Ed. 2d 290, 98 S. Ct. 2408 [1978]). If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, the appellate court must not substitute its view of the evidence for

that of the trial court. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979).

Substantial evidence was recently described in *State v. Haskins*, 262 Kan. 728, Syl. ¶ 1, 942 P.2d 16 (1997):

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion."

When the facts material to a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law, *State v. Vandiver*, 19 Kan. App. 2d 786, 788, 876 P.2d 205 (1994), *aff'd* 257 Kan. 53, 891 P.2d 350 (1995), upon which our scope of review is unlimited. *State v. Heffelman*, 256 Kan. 384, 386, 886 P.2d 823 (1994).

Deputy Ford was the only witness at both the preliminary hearing and the hearing on the motion to suppress, and his credibility, competence, and ability to detect marijuana during the brief patdown search were challenged by Wonders. The State contends in its petition for review that the Court of Appeals erroneously determined the facts were not in conflict in order to reweigh the evidence and disregard the trial court's specific finding, based on substantial competent evidence, that it was immediately apparent to Ford, an experienced officer, that the bulge discovered in Wonders' jeans pocket was baggies of marijuana.

There is considerable merit to the State's argument, particularly as the Court of Appeals' opinion justifies its result by making factual findings contrary to those made by the trial court. The Court of Appeals' opinion stated it could not have been immediately apparent to Ford that the bulge in Wonders' pocket was marijuana because Ford lacked drug detection training, could not adequately describe what a baggie of marijuana felt like, and had asked Wonders what was in his pocket. The Court of Appeals' finding regarding Ford's credibility and experience is directly contrary to that made by the trial court.

Wonders contends that we should not accept the plain feel exception in Kansas. However, if we should decide to do so, Wonders

claims Ford exceeded its scope during the pat-down search. He asserted the ultimate question is one of law requiring independent appellate review, the standard of which is de novo.

The question of whether Kansas should adopt the plain feel exception to the search warrant requirement of the Fourth Amendment is clearly a question of law over which our standard of review is unlimited. The trial court, however, viewed the witness; therefore, insofar as Ford's credibility and discrepancies in his testimony are concerned, it is the best judge of the facts developed. We will not on appeal reweigh the evidence where the trial court's findings are supported by substantial evidence.

*Plain feel exception*

Although Wonders asserted on appeal that Kansas should not adopt the plain feel exception of *Dickerson,* this issue was resolved against him by the Court of Appeals. He did not file a cross-petition for review, but as this issue is such an integral part of this appeal, we deem it necessary to be addressed.

In *Dickerson,* 508 U.S. at 375, the United States Supreme Court decided the plain view exception to the Fourth Amendment search warrant requirement applied by analogy to objects discovered by the sense of touch. The ultimate result in the case turned on whether the lump of contraband was "immediately apparent" to the officer making a search for weapons pursuant to *Terry* or whether such determination could be made only after " 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket.' " 508 U.S. at 377-78. Minnesota's refusal to extend the plain view doctrine to encompass a sense of touch, however, was expressly reversed by a unanimous United States Supreme Court.

As to the plain view doctrine, the *Dickerson* Court stated:

"Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. [Citations omitted.] If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if 'its incriminating character [is not] "immediately apparent," ' [citation omitted]—the plain-view doctrine cannot justify its seizure. [Citation omitted.]" 508 U.S. at 375.

After explaining why such warrantless searches were justified, the Court went on to declare:

"The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." 508 U.S. at 375-76.

In applying these rules to the *Dickerson* facts, the Court determined the officer who conducted the search had exceeded the lawful bounds of a *Terry* search by the time he gained probable cause to believe the object in the suspect's jacket was contraband. The Court noted the district court had not made precise findings on this point, but went on to accept the Minnesota Supreme Court's conclusion from a " 'close examination of the record' " that the officer did not immediately recognize the lump as crack cocaine, but only did so after " 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." 508 U.S. at 378. This finding was made by the Minnesota Supreme Court even though the officer had testified that he was " 'absolutely sure' that the substance was crack cocaine." *State v. Dickerson,* 481 N.W.2d 840, 849 (Minn. 1992).

In applying this rule to Kansas, we commence with our holding regarding the sameness of the protections afforded under both the United States and the Kansas Constitutions. This rule was most recently recognized in *State v. Ninci,* 262 Kan. 21, 29-30, 936 P.2d 1364 (1997), where Justice Abbott stated:

"The Fourth Amendment to the United States Constitution provides:

'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'

"Section 15 of the Kansas Constitution Bill of Rights provides:

'The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or property to be seized.'

"Section 15 of the Kansas Constitution Bill of Rights provides protection identical to that provided under the Fourth Amendment to the United States Constitution. See *State v. Johnson*, 253 Kan. 356, 362, 856 P.2d 134 (1993) ('[T]he wording and scope of the two sections are identical for all practical purposes. If conduct is prohibited by one it is prohibited by the other.'); *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993)."

We have not historically construed the Kansas Constitution in a different manner than the United States Supreme Court has construed the United States Constitution in like provisions, and we are not inclined to do so in this instance.

We have previously adopted the plain view exception to the search warrant requirement of the Fourth Amendment in *State v. Galloway*, 232 Kan. 87, Syl. ¶ 2, 652 P.2d 673 (1982), where we held: "The 'plain view' exception to the 4th Amendment applies when 1) the initial intrusion which afforded authorities the plain view is lawful; 2) the discovery of the evidence is inadvertent; and 3) the incriminating character of the article is immediately apparent to searching authorities."

It is consistent with our previous decisions to recognize the plain feel exception announced by the Court in *Dickerson*, and we expressly hold that the exception applies to lawful searches in Kansas. This is also consistent with the conclusion reached by almost all other states which have been asked to extend this exception to the Fourth Amendment search warrant requirement to include plain feel searches. See *State v. Trine*, 236 Conn. 216, 234, 673 A.2d 1098 (1996); *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. 1996); *Interest of B.C.*, 453 Pa. Super. 294, 310, 683 A.2d 919 (1996) (pointing out that only New York, in *People v. Diaz*, 81 N.Y.2d 106, 595 N.Y.S. 2d 940, 612 N.E. 2d 298 [1993], had rejected the plain feel doctrine, but prior to *Dickerson*). Even the Minnesota Court of Appeals, after the *Dickerson* decision, concluded there was no compelling reason why Minnesota should not adopt the plain feel exception to the Minnesota Constitution. *State v. Burton*, 556

N.W. 2d 600, 602-03, *rev. denied* February 26, 1997 (Minn. App. 1996). We see no persuasive reason to refuse to follow *Dickerson*.

*Scope of the search*

Having decided the plain feel exception applies in Kansas, we then must ascertain if the trial court correctly ruled the exception applied to the facts of the present case. In making this determination, we must rely upon the factual findings of the trial court if supported by substantial evidence.

The trial court explicitly found that Ford "was experienced and trained in the recognition of and feeling of baggies of marijuana" and that although Ford could not put the feeling into words, they "did have a consistent feel." The trial court emphasized that it would likely have decided the case differently if Ford had lacked experience and training in handling drug arrests. In discussing Ford's credibility, the trial court stated:

"Once again, the key factor is the credibility of the officer. Suffice it to say that I have carefully considered the testimony of Officer Ford in this case, and based upon his training and experience and the unshakable certainty of his comments about the identity of the bulge during his testimony, I am satisfied that there was probabl[e] cause for the seizure. . . ."

In denying the motion to suppress the evidence, the trial judge held: "Under all of the circumstances of the case, I find his testimony to be credible and I am satisfied that the bulge was apparent to the officer as marijuana in a baggie when he was patting down the defendant for weapons." The trial court acknowledged that Ford had completed the pat-down before returning to the bulge a second time and had asked Wonders what was in his pocket before removing the baggies. Despite these factors, the trial court ruled the marijuana was immediately apparent to Ford upon the initial pat-down. Testimony in the record supports the trial court's decision.

Ford was first questioned regarding the pat-down during cross-examination at the preliminary hearing. He testified as follows:

"Q. [Defense counsel] Okay. And when you patted him down did you first pat-down his chest?

"A. Yes.

"Q. And you didn't find anything?

"A. No.

"Q. Then you started down to the lower body. Did you just pat him down completely first or did you go directly to his front pocket?

"A. It was a complete pat-down initially.

"Q. And during that initial pat-down of the lower body did you find any bulges that would make you think there was a weapon?

"A. No.

"Q. But you went back and then searched his pocket?

"A. The—I felt—what I did feel in his pant pocket was a bulge, and I did at that time ask Mr. Wonders what was in his pocket, there was no reply, and that's when I did locate the marijuana in his pocket.

"Q. But it wasn't a bulge that would indicate to you there was a weapon in the pocket?

"A. No."

The following also occurred during redirect examination:

"Q. [by prosecutor] Okay. When you found the bulge in Mr. Wonders' pocket did you have an idea of what it might be?

"A. Yes, I did.

"Q. And what did you think it was when you felt it, initially?

"A. Initially, I did feel it to be baggies of content."

During direct examination at the hearing on the motion to suppress, Ford stated that the primary purpose of the pat-down was to search for weapons, but he acknowledged he was aware that he could seize contraband discovered during such a search. Ford further testified:

"Q. When you pat down Mr. Wonders can you tell me, did you follow standard procedure?

"A. Yes.

"Q. And when you came to the area where you felt the bulges in his front pocket— Was it in his front pocket?

"A. Yes.

"Q. What did you feel?

"A. I felt what I believed to be a baggie of marijuana.

"Q. And why did you believe it to be a baggie of marijuana?

"A. My experience in finding that type of item before.

"Q. And as you were doing the pat-down, how did you do the pat-down in that area?

"A. Well, initially, it was the procedure to pat down with the palm of the hands . . . while he was in a position to be off balance.

"Q. Okay. And when—when you felt the baggie did you do any other—when you initially felt the baggie did you do any other movement or pushing around to try to develop what that might be in his pocket?

"A. No.

"Q. And why not?

"A. It was immediately apparent to me.

. . . .

"Q. After you felt the bulge in his pocket what did you do?

"A. After I felt them, I gave him an opportunity and I asked him what it was in his pocket.

"Q. And why did you do that?

"A. Just inquiring.

"Q. Okay. Were you sure at that point that it was marijuana in his pocket?

"A. I felt sure.

"Q. And what did he say?

"A. He didn't say anything.

"Q. Okay. Then what did you do?

"A. Then the marijuana was taken out of his pocket."

During cross-examination, Ford indicated that he completed an initial pat-down lasting 10 to 12 seconds and admitted he returned to the pocket and patted it down again for an additional 3 seconds. When questioned by the court, Ford replied that he had not manipulated or squeezed the pocket during either pat-down search.

The trial court was in a unique position to evaluate Ford's experience, training, and ability to detect and recognize marijuana. As the trial court's findings on these matters are supported by substantial evidence, they may not be disturbed on appeal.

Although cases have been cited where courts have rejected an officer's testimony that contraband was immediately apparent to them, in none of these cases did an appeals court reject a trial court's specific factual finding that the contraband was immediately apparent to the officer. See, *e.g.*, *United States v. Mitchell*, 832 F. Supp. 1073 (N.D. Miss. 1993), and *United States v. Winter*, 826 F. Supp. 33 (D. Mass. 1993), *aff'd* 29 F.3d 6 (1st Cir. 1994). We are not a trial court, and if the trial court's explicit finding that the marijuana was immediately apparent to Ford during the initial frisk is supported by substantial evidence, it logically follows that the subsequent seizure of the marijuana is allowed.

We do not find that the rhetorical question Ford posed to Wonders about the contents of his pocket is inconsistent with his already knowing the pocket contained marijuana. Nor do we find it significant that Ford completed the pat-down before returning to the pocket to remove the marijuana, as such a practice is in the interest of the officer's safety. That an officer may wish to confirm whether a suspect is carrying a weapon before revealing the discovery of contraband is no reason to find that the contraband was not immediately apparent to the officer.

The legal question we must focus upon is whether passing over and then returning to an area negates a finding by a trial court that the nature of the contraband was immediately apparent upon the initial search. This question requires a brief analysis of the meaning of the phrase "immediately apparent."

In *Texas v. Brown,* 460 U.S. 730, 741, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983), the United States Supreme Court, in a plurality opinion, rejected the notion that "immediately apparent" in the context of "plain view" means that an officer must be possessed of near certainty regarding the seizable nature of items. The Court stated:

"[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine.

". . . . Plainly, the Court did not view the 'immediately apparent' language of *Coolidge* as establishing any requirement that a police officer 'know' that certain items are contraband or evidence of a crime." 460 U.S. at 741.

The Court then reaffirmed that the seizure of property in plain view is reasonable if there is probable cause to associate the property with criminal activity. 460 U.S. at 741-42. The *Brown* Court recognized that circumstances surrounding the encounter and the officer's training and experience may contribute to a finding of probable cause. 460 U.S. at 742-43.

In *People v. Champion,* 452 Mich. 92, 109, 549 N.W.2d 849 (1996), the Michigan Supreme Court discussed what the *Dickerson* Court had meant by "immediately apparent" and quoted *State v. Wilson,* 112 N.C. App. 777, 782, 437 S.E.2d 387 (1993), which

ruled: " '[W]e need only determine whether [the officer] had probable cause to believe that the contraband he felt during his pat down search was cocaine.' " Accord *Dickerson v. United States*, 677 A.2d 509, 512-13 (D.C. 1996). The *Champion* court also emphasized that the totality of the circumstances must be appreciated when deciding whether such probable cause exists. 452 Mich. at 111. A footnote in the case pointed out that other courts, two of which the Court of Appeals relied upon in the present case, *United States v. Ross*, 827 F. Supp. 711 (S.D. Ala. 1993), *aff'd* 19 F.3d 1446 (11th Cir. 1994); and *Winter*, 826 F. Supp. 33, had misconstrued *Dickerson's* "immediately apparent" language as requiring a degree of suspicion approaching certainty. 452 Mich. at 106 n.8.

When we adopted the plain view exception in *Galloway*, 232 Kan. 87, we looked to *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2002, *reh. denied* 404 U.S. 874 (1971), for the three basic requirements, previously set forth, which must be met before the plain view exception may be applied. 232 Kan. at 91. We also quoted language from *United States v. Ross*, 527 F. 2d 984, 985 (4th Cir. 1975), *cert. denied* 424 U.S. 945 (1976), which held: " '[F]or an object to be "incriminating" for constitutional purposes the seizing authority need only have reasonable or probable cause to believe that the object is evidence of a crime.' " 232 Kan. at 92. After commenting on several Kansas cases, we stated:

"From our examination of the cases, both federal and state, we conclude the plain view exception to the 4th Amendment of the United States Constitution and Section 15 of the Bill of Rights of the Kansas Constitution is applicable only where it is shown: 1) The initial intrusion which afforded the authorities the plain view was lawful by virtue of a warrant (search or arrest), waiver or exigent circumstances; 2) the discovery of the evidence was inadvertent; and 3) the authorities immediately had reasonable or probable cause to believe the evidence observed in plain view was incriminating in nature." *Galloway*, 232 Kan. at 93-94.

This language from *Galloway* is consistent with the construction given to the phrase "immediately apparent" in *Brown*. It is thus apparent that we have applied a probable cause meaning to the phrase in the plain view context, just as the United States Supreme Court stated it had intended.

Due to this analysis, we find that the same construction of the "immediately apparent" requirement in plain view situations should be applied to those involving plain feel. It would not be logical or practical to have one set of rules which applies to a plain view exception and a different and more stringent set which relates solely to the application of the plain feel exception. We believe that no good reason supports a different interpretation of "immediately apparent" in the plain feel context than that given by the United States Supreme Court and this court in plain view cases.

In light of this interpretation of "immediately apparent," we hold that Ford need only have had reasonable or probable cause to believe it was immediately apparent to him that the bulge he felt during his initial pat-down of Wonders was marijuana. This determination of necessity considers the totality of the circumstances surrounding the pat-down, which includes the detection of the drug paraphernalia in the vehicle and brings into play Ford's training and experience as specifically found by the trial court.

It is clear that substantial evidence supports the trial court's finding that Ford had probable cause to believe the bulge in Wonders' pocket was marijuana, despite his returning to the pocket. Furthermore, our extensive examination of similar cases from other jurisdictions supports this conclusion.

In cases where a second search or seizure was deemed impermissible under *Terry*, either the trial court had found that the items were not immediately apparent, the trial court had made no such findings, or the officers had indicated that they did not know what the item was. See *Dickerson*, 508 U.S. 366 (trial court made no findings); *United States v. Gibson*, 19 F.3d 1449, 1451 (D.C. Cir. 1994) (trial court made no findings; officer simply found a hard, flat, angular object which did not correspond to anything expected in a pocket, but which he knew was not a weapon); *United States v. Ponce*, 8 F.3d 989 (5th Cir. 1993) (trial court made no findings, but officer's testimony belied notion that item was immediately apparent); *United States v. Taylor*, 997 F.2d 1551 (D.C. Cir. 1993) (second search occurred only after officer was told via radio where to search); *Mitchell*, 832 F. Supp. at 1078-79 (trial court found cocaine was not immediately apparent despite officers' testimony);

*Ross,* 827 F. Supp. at 719 (trial court found cocaine in box was not immediately apparent because officer did not believe the box itself to be contraband); *Winter,* 826 F. Supp. at 37 (trial court found contraband was not immediately apparent after officer testified repeatedly he did not know what the bulge was).

In cases where an appellate court has reversed a trial court's failure to suppress evidence seized during or after a *Terry* search, the appellate courts found no evidence in the record that the contraband was immediately apparent to the searching officer. See *Jackson v. State,* 669 N.E.2d 744, 749 (Ind. App. 1996) (officer failed to testify that he immediately recognized substance as cocaine); *State v. White,* 110 Ohio App. 3d 347, 355, 674 N.E.2d 405 (1996) (no evidence that identity of contraband was immediately apparent to officer); *Com. v. Mesa,* 453 Pa. Super. 147, 156, 683 A.2d 643 (1996) (officer testified he did not identify contents until after removing bulge from pocket).

In the cases we have examined where the trial court explicitly found that the seized items were immediately apparent to the officers, appellate courts have upheld this finding. *Howard v. State,* 220 Ga. App. 579, 582, 469 S.E.2d 746 (1996); *Bratcher v. State,* 661 N.E.2d 828, 832 (Ind. App. 1996); *Rushing,* 935 S.W.2d at 33; *State v. Pearson,* 125 N.C. App. 676, 680, 482 S.E.2d 16 (1997); *Strickland v. State,* 923 S.W.2d 617, 622 (Tex. Crim. 1995); *Dickerson,* 677 A.2d at 513. Other courts have upheld searches with no detailed discussion of the trial court's findings. See *United States v. Hughes,* 15 F.3d 798, 802 (8th Cir. 1994); *Champion,* 452 Mich. 92 (reversing Michigan Court of Appeals); *Burton,* 556 N.W.2d at 602.

Furthermore, there are several cases with factual patterns similar to the one before us in which courts have upheld the searches. The Connecticut Supreme Court upheld a search very similar to the search of Wonders in *State v. Trine,* 236 Conn. 216, 234, 673 A.2d 1098 (1996). In *Trine,* the officer had limited himself to an open, flat-handed pat-down of the exterior of the clothing. During the course of the pat-down, he felt an object which was not a weapon in Trine's pocket. Though the officer did not manipulate this object, he immediately believed the object to be cocaine. After the

pat-down was complete, the officer returned to the pocket, searched it, and seized a package of rock cocaine. The extensive experience of the officer was deemed to be an important factor in *Trine*.

The majority utilized a probable cause analysis to conclude legally sufficient probable cause existed to justify the seizure once it was immediately apparent to the officer that contraband was in the pocket. The dissent would not have allowed the plain feel exception to expand a *Terry* search and complained: "The majority, without any independent analysis of the reliability of 'plain touch,' its reasonableness or its effects upon the privacy rights of our citizens, adopts the holding of *Minnesota v. Dickerson*." 236 Conn. at 244.

In *Andrews v. State*, 221 Ga. App. 492, 493, 471 S.E.2d 567 (1996), an officer discovered during a pat-down search what he was "99% sure" was a large "cookie" of crack cocaine in Andrews' shorts. The officer squeezed it to confirm his initial belief before asking Andrews to unzip his shorts and remove the substance. In affirming Andrews' conviction, the Georgia Court of Appeals, although not discussing the trial court's findings, distinguished the case from the facts of *Dickerson*. The court emphasized that the officer in *Andrews* had discovered what he immediately knew was crack cocaine while still conducting a search for weapons without having to further manipulate the object.

In *Interest of B.C.*, 453 Pa. Super. at 306, the Pennsylvania Superior Court reached a similar conclusion as that of the *Andrews* court. The court pointed out the presence of the same distinguishing factors in upholding a search where the officer, while patting down the subject, squeezed the pockets as he normally did.

We are not unaware that experienced, knowledgeable law enforcement officers know the "magic words" to be related when their searches and seizures are challenged. However, the more persuasive argument remains. There was substantial competent evidence to support the trial court's findings and decision. We will not abandon our required standard of review and focus on evidence to justify a lack of belief in Ford's testimony, credibility, or experience. Findings on these issues remain the function of the trial court. In this instance, the trial court properly ruled the evidence

was permissibly seized pursuant to the *Dickerson* plain feel exception.

The judgment of the Court of Appeals adopting the plain feel exception in Kansas is affirmed. The judgment of the Court of Appeals reversing the trial court's decision not to suppress the evidence is reversed. The trial court is affirmed.