NOT DESIGNATED FOR PUBLICATION

No. 127,097

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICO TEREZ BARNES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Submitted without oral argument. Opinion filed August 8, 2025. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Maria C. Davies*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM: In this direct appeal, Rico Terez Barnes contests his conviction for possession of methamphetamine. He contends that the searches of his car and then later his person were improper. The contraband, in his view, should have been suppressed, and thus he seeks our reversal. Our review of the record reveals no legal error, and we are not persuaded by Barnes' arguments. We affirm.

1

*Two police officers approach a car they stopped for a defective tag light.*

This matter was tried on stipulated facts. We offer a condensed view.

In early February 2022, Officer William Andruss and Officer Ethan Salinas stopped a car for having an inoperable tag light. It was around 10 p.m. Officer Andruss approached the driver side of the car. Officer Salinas approached the passenger side of the vehicle. The driver had a cigarette in his mouth and appeared to be smoking. While standing outside the car, Officer Salinas saw what he believed to be a marijuana blunt on the front passenger seat.

Later, Officer Salinas testified that from his vantage point standing outside the vehicle, he observed a marijuana cigarette—otherwise known as a blunt. He described seeing a burnt brownish substance. He agreed that it could have been a variety of substances, including a legal substance, but based on his training and experience, it appeared to be a marijuana blunt and he believed it was marijuana. He agreed that without looking at it closer, he could not tell exactly what it was. He had been on patrol for six years and encountered marijuana almost every day.

Officer Andruss saw the suspected blunt on the front seat of the vehicle and said "'let me see that'" (referring to the suspected blunt). Barnes handed the suspected blunt to Officer Andruss. Officer Andruss testified that Officer Salinas had alerted him to the suspected marijuana cigarette. Before Barnes handed the suspected blunt to Officer Andruss, he could not tell what the substance was. He described it as having a cigar wrapper but said it was skinnier than a cigar. The officer examined the suspected blunt after Barnes handed it to him and believed it contained marijuana.

At Officer Andruss' direction, Barnes got out of the car. Barnes was not free to leave. Barnes said the substance was not marijuana. Officer Andruss asked Barnes if he

2

had any weapons on him. Right after that, Andruss asked, "Do you mind if I search you?" Barnes said, "No problem." Rather than pat Barnes down, Andruss conducted a full search of Barnes' pockets.

Officer Andruss searched Barnes' two front pant pockets. During the search, Officer Andruss located a small "dime bag" containing a clear crystalline substance in the right zipper pocket. Based on training and experience, Officer Andruss believed the substance was methamphetamine. In the left pocket, he located cash. Officer Andruss also located a digital scale on Barnes' person. After finding the crystalline substance, Officer Andruss placed Barnes in handcuffs and arrested him and placed him in the back of his patrol vehicle. Officer Salinas and Officer Andruss then conducted a vehicle search after the Defendant's arrest.

Neither officer smelled the odor of marijuana from outside the vehicle. Immediately upon opening the passenger door, however, Officer Salinas did smell marijuana.

While the officers were searching his car, Barnes was seated in the back of the patrol vehicle and started talking to himself. The fleet camera of the patrol vehicle was on and recorded his comments:

    a.  "I knew I had meth in my pockets."

    b.  "They got that shit out of my pockets[.]"

    c.  "Shit was right in my fucking pocket . . . stupid ass shit."

    d.  "I kept on saying I got this ice on me, I forgot what pocket it was in."

    e.  "If I didn't have this ice on me, they would have had nothing on me."

    f.  "You can search all yall want, there ain't shit in there[.] . . . The only thing I had was that."

    g.  "I wasn't thinking, I should have got that shit out of my mother fucking pocket."

Once at the station, Officer Andruss read Barnes his *Miranda* rights. He waived his *Miranda* rights and agreed to speak with the officer. During the interview, Officer Andruss asked, "'Is that meth you had on you? That's yours I'm assuming?'" Barnes responded by nodding his head up and down indicating yes.

The Johnson County Crime Lab confirmed the white crystal substance was methamphetamine. It weighed .48 grams. Nothing in the record reveals the suspected marijuana blunt was tested to determine whether it was marijuana.

Before trial, the trial court denied Barnes' motion to suppress. The court noted that Barnes did not challenge the legality of the traffic stop. The court found that right after approaching the vehicle, one or both officers saw what they thought appeared to be a marijuana blunt. The court stated, "All they have to do is have a reasonable suspicion, which based on their testimony, I believe that they did, that that was a marijuana blunt sitting on the seat." The court did not believe there was anything wrong with the officer asking Barnes to hand the suspected blunt to him. The officer continued to believe it was a marijuana blunt. The court stated, "From that point forward, I believe that Kansas law is clear, that the officers now have a reasonable suspicion, probable cause, to arrest the Defendant for possession of marijuana. Because they have that, they have a basis to search the Defendant and search the car."

The trial court found Barnes voluntarily consented to the search of his person. Although there were two officers, it was a routine patrol; there was no aggressive questioning; there were no guns drawn; and the officers were polite—"almost conversational." The suspected methamphetamine found on Barnes gave the officers another reason to validly search Barnes' vehicle.

The trial court found that Barnes made some spontaneous statements while he was alone in the back of the patrol car. They were conversational and not the result of an

4

interrogation. The court ruled that any of Barnes' statements which were conversational or made after the *Miranda* rights were given were admissible.

The trial court found Barnes guilty of possession of methamphetamine and possession of drug paraphernalia, as charged, for the methamphetamine and baggie found on his person. The court sentenced him to 18 months in prison.

In this appeal, Barnes argues that this evidence was discovered through unconstitutional searches of his car and his person. We look at the search of his car first, then the search of his person.

*Does the plain-view exception to the search warrant requirement apply here?*

Barnes contends the officer's command for him to hand over the blunt—"'[L]et me see that'"—was a seizure because Barnes did not reasonably feel free to disregard or refuse the command. He argues the plain-view exception to the search warrant requirement did not allow such seizure because the officers could not determine from their positions standing outside the car that the substance inside the cigar wrapper was marijuana. In other words, the incriminating character of the object was not immediately apparent without the officer conducting a further search of the object. He argues the trial court erred by using a reasonable suspicion rather than a probable cause standard.

In reply, the State agrees that the officer seized the blunt. But such seizure was permitted because—from outside the vehicle—Officer Salinas came to the common-sense conclusion that the substance was marijuana. This conclusion was based on his extensive training and experience.

5

*We rely on well-known rules.*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024). As relevant here, exceptions to the warrant requirement include: plain view, probable cause plus exigent circumstances, consent, and search incident to lawful arrest. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019).

Under the plain-view exception, police may seize a plainly viewed object if:

(1)  the police officer is lawfully at the location and position from which the object was viewed;

(2)  the incriminating character of the object is immediately apparent from the officer's plain-view observation; and

(3)  the officer has a lawful right of access to the place and position at which the object may be seized. *Doelz*, 309 Kan. at 140-41.

If an officer lacks probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if the object's incriminating character is not immediately apparent, the plain-view doctrine cannot justify the seizure of the object without a warrant. *Doelz*, 309 Kan. at 141. "Immediately apparent" does not mean near certainty concerning the incriminatory character of evidence, rather the officer needs only probable cause to believe that the object is evidence of a crime. *State v. Wonders*, 263 Kan. 582, 596, 952 P.2d 1351 (1998).

Under the probable cause plus exigent circumstances exception, a warrantless search of a vehicle travelling on the road is permitted anytime probable cause is present. *Crudo*, 318 Kan. at 35. A vehicle's mobility is considered an exigent circumstance for purposes of the exception. A warrant is not required to search a vehicle if probable cause

6

exists to believe the vehicle contains contraband or evidence of a crime and the vehicle is readily mobile. *Doelz*, 309 Kan. at 143.

Probable cause means there is a fair probability that the vehicle contains contraband or evidence of a crime. *Doelz*, 309 Kan. at 143-44. Probable cause is a common-sense conclusion not a certainty. *State v. Hillard*, 315 Kan. 732, 752, 511 P.3d 883 (2022), *abrogated on other grounds by State v. Barnes*, 320 Kan. 147, 563 P.3d 1255 (2025); *State v. Bogart*, No. 119,013, 2019 WL 1575262, at *5 (Kan. App. 2019) (unpublished opinion). The State carries the burden to prove that the search and seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

Three cases are instructive here. In *State v. Graham*, 273 Kan. 844, 846-48, 46 P.3d 1177 (2002), while standing outside of a car conducting a traffic stop, an officer saw what appeared to be marijuana on the front passenger floorboard. He described the substance as "'pieces of green vegetation, not large.'" The officer was able to distinguish the marijuana fairly easily against the black carpet. The officer said that based on his training and experience there was a good possibility that it was marijuana. The court held the officer had reasonable cause to believe the substance was marijuana based on his training and experience, i.e., its incriminating character was immediately apparent. 273 Kan. at 849.

Next, in *State v. Callahan*, No. 113,711, 2016 WL 4413349, at *1, 3 (Kan. App. 2016) (unpublished opinion), while making a traffic stop an officer from outside the vehicle saw a white granular substance he described as "a few small specks, crystals, or shards" on the front driver's seat. The other officer testified that he had knowledge of what crystal methamphetamine found in that county usually looked like. Based on their training and experience the officers believed it was methamphetamine. A panel of this court held the officers had probable cause to believe there was contraband in the vehicle. 2016 WL 4413349, at *4-5.

Finally, in *State v. Jones*, No. 126,361, 2024 WL 3381655, at *1-2 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. ___(2025), while outside a vehicle conducting a traffic stop, an officer saw a red one-hit pipe about two inches long in the cupholder of the vehicle. The officer testified based on her training and experience, she recognized the pipe as "a device commonly used for smoking marijuana as opposed to just any random pipe." 2024 WL 3381655, at *4. A panel of this court held the officer had probable cause to believe there was marijuana in the vehicle based on her plain-view observation of the pipe. 2024 WL 3381655, at *5.

*The plain-view exception applies here.*

This case involves the different perspectives of two officers. From Officer Andruss' vantage point at the *driver* side of the car, he could not tell exactly what the substance was inside the skinny wrapper on the passenger seat. He had to examine the suspected blunt after Barnes handed it to him. But Officer Salinas had a closer view from outside the *passenger* side of the car. He testified that based on his training and experience, it appeared to be a marijuana blunt. He had been on patrol for six years and encountered marijuana almost every day. Officer Salinas was unsure if the substance was marijuana. See *Wonders*, 263 Kan. at 596. Officer Salinas had probable cause that marijuana was in the vehicle and alerted Officer Andruss.

The three cases—*Graham*, *Callahan*, and *Jones*—persuade us that the plain-view doctrine applies here. It is true that the district court articulated the incorrect standard— reasonable suspicion as opposed to probable cause. But based on the undisputed facts, the incriminating nature of the blunt was immediately apparent to one of the officers. In other words, there was a fair probability that the car contained contraband. See *Doelz*, 309 Kan. at 143-44. We hold that there was probable cause to seize the blunt and then search the car.

*Can the State rely on Barnes' consent to the search of his person?*

Barnes argues that any consent he gave to search his person did not purge the taint of the unconstitutional seizure of the suspected blunt. Without the seizure of the suspected blunt, Barnes could not have been detained any longer than necessary to complete the traffic stop. It was the suspected marijuana that led the officer to order Barnes out of his vehicle and search him. The consent was also not knowingly and voluntarily given. The officer opened his car door and commanded him out. Barnes was not free to leave, was outside his vehicle in the cold in an abandoned parking lot late at night, and was surrounded by two uniformed police officers. The officers repeatedly accused him of possessing marijuana. Even if the consent was voluntary, he was consenting only to a search for weapons—not a search of his pockets.

The State says Barnes' consent was knowing and voluntary. The officers did not aggressively question Barnes, did not have their guns drawn, and were polite. The search lasted under 20 seconds. Even if Barnes had refused, the officers would have searched his vehicle based on the probable cause from finding the marijuana blunt, arrested him after finding the digital scale with white residue on it, and searched Barnes' person incident to arrest.

*The controlling law is well-established.*

There are generally four types of encounters between individuals and police:
(1) voluntary or consensual encounters,
(2) investigatory detentions,
(3) public safety or public welfare stops, and
(4) arrests. *State v. McDonald*, 318 Kan. 486, 488, 544 P.3d 156 (2024).

Investigatory detentions are permitted under the Fourth Amendment to the United States Constitution and K.S.A. 22-2402 if an officer has a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *State v. Bates*, 316 Kan. 174, 182-83, 513 P.3d 483 (2022). Investigatory detentions "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Doelz*, 309 Kan. at 139.

A traffic stop is analogous to an investigatory detention. A driver is seized from the moment the car is stopped by police. The authority for the traffic stop ends when the purpose for the traffic stop is or reasonably should have been completed. Normally, an officer may request license and registration, run a computer check, and issue a citation. Yet that does not mean an officer must turn a blind eye when conducting the stop. When the officer gains an objectively reasonable and articulable suspicion that an unrelated crime is occurring during a traffic stop, the officer can broaden his or her inquiry to satisfy that suspicion. *State v. Cash*, 313 Kan. 121, 126-27, 483 P.3d 1047 (2021); *State v. Spagnola*, 295 Kan. 1098, 1104, 289 P.3d 68 (2012); *State v. Morlock*, 289 Kan. 980, 987, 218 P.3d 801 (2009).

Reasonable suspicion is a lower standard than probable cause. *Cash*, 313 Kan. at 134. Reasonable suspicion is a particularized and objective basis for suspecting a person of criminal activity. A mere hunch is insufficient. But the suspicion need not rise to the level of probable cause, which is "'the reasonable belief that a specific crime has been committed and that the defendant committed the crime.'" *Bates*, 316 Kan. at 183. What is reasonable depends on all the circumstances as viewed by a trained law enforcement officer. *Cash*, 313 Kan. at 134.

To establish valid consent, the State must provide clear and positive testimony that any consent was unequivocal, specific, and freely and intelligently given. The State must also show the absence of duress or coercion, express or implied. The existence,

voluntariness, and scope of a consent to search is a question of fact determined from all the circumstances. *State v. Daino*, 312 Kan. 390, 397, 475 P.3d 354 (2020).

The appropriate inquiry is whether a reasonable person would feel free to decline the officer's request. *Spagnola*, 295 Kan. at 1107. Courts consider a nonexclusive list of objective factors to determine whether a consent to search was voluntary: the presence of more than one police officer; the display of a weapon; physical contact by the police officer; use of a commanding tone of voice; activation of sirens or flashers; a command to halt or to approach; and an attempt to control the ability to flee. 295 Kan. at 1108.

Generally, a pat down for weapons only allows an officer to pat down a person's outer clothing and does not allow the officer to place his or her hands inside any pockets or under the outer surface of any clothing, unless or until a weapon is found. *State v. Golston*, 41 Kan. App. 2d 444, 455, 203 P.3d 10 (2009). The State carries the burden to prove that the search and seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

*We agree with the district court's common sense holding.*

We recognize that this was more than a pat-down search. Here, the officer searched Barnes' pockets. In them, the officer found drugs in a baggie. Barnes argues that he only consented to a search for weapons not a search of his pockets. He didn't say that when he was searched. To the contrary, his conduct and apparent nonchalance indicated his consent was unlimited. There were no weapons drawn here, and we see no evidence in the record of any confrontation. When the officer asked, "Do you mind if I search you," a reasonable person could have said "no, I don't want to be searched."

We adopt the view of the district court concerning the circumstances of Barnes' consent to search. Simply put, his consent was not coerced. The search of his person

11

resulted from Barnes' valid consent. There was no legal reason for the court to reject the admission of the contraband into evidence against Barnes.

Affirmed.