IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,944

STATE OF KANSAS,
*Appellee*,

v.

JENNIFER L. GOODRO,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under Kansas statute, an officer may make a warrantless arrest if the officer has probable cause to believe a person is committing or has committed a misdemeanor and probable cause to believe the individual will not be apprehended unless the person is immediately arrested.

2.

To determine whether an officer has probable cause to believe an individual will not be apprehended unless the person is immediately arrested, the court must consider the totality of circumstances from the standpoint of an objectively reasonable police officer and consider all the information in the officer's possession at the time of arrest, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 11, 2021. Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed April 1, 2022. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

1

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Andrew Davidson*, senior assistant district attorney, argued the cause, and *Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: The district court convicted Jennifer Lynn Goodro of felony possession of methamphetamine, misdemeanor possession of drug paraphernalia with intent to use, and misdemeanor theft after an inventory search following her arrest for the theft. Goodro argues the district court should have suppressed the drug evidence because the officer illegally arrested her rather than issuing her a notice to appear. But K.S.A. 22-2401(c)(2)(A) provides that an officer may arrest an individual for a misdemeanor offense if the officer has probable cause to believe the suspect committed the offense and the suspect will not later be apprehended unless immediately arrested. Here, the totality of circumstances existing at the time of the arrest establishes the officer had probable cause to believe Goodro committed misdemeanor theft and Goodro would not be apprehended. We therefore affirm Goodro's convictions.

## FACTS

An asset protection employee at the Walmart in Hutchinson, Kansas, detained Goodro for trying to leave the store without paying for merchandise worth several hundred dollars. Goodro identified herself as Jennifer Zorn but did not provide identification. Walmart policy directs security personnel to contact law enforcement if the dollar amount of the theft exceeds $25 and the suspect does not provide identification. So

the Walmart employee called law enforcement and advised dispatch he was holding an individual named Jennifer Zorn in the store office based on suspicion of theft.

Dispatch notified Hutchinson police officers Raven Boettger and Stephen Schaffer and asked them to respond. The name Jennifer Zorn was added to the dispatch database. Officer Schaffer arrived on the scene first with Officer Boettger arriving a few minutes later.

When Officer Boettger arrived, the Walmart employee recounted the facts underlying the theft allegation. Officer Boettger asked Goodro a series of identification questions. Officer Boettger asked if Goodro had a driver's license, and Goodro responded that she did, but it recently was stolen. Officer Boettger asked Goodro's name, and Goodro said her name was Jennifer Lynn Zorn. Goodro provided a date of birth, an address in Lyons, Kansas (a town in a different county about 20 minutes away from Hutchinson), and a phone number.

Officer Boettger read Goodro her Miranda rights and questioned her for about 30 minutes. Officer Boettger asked Goodro about the theft. Goodro eventually admitted she took the items out of the store without paying for them and intended to go back to Lyons with the friend who drove her to the Hutchinson Walmart that day. Goodro asked if the officer planned to arrest her. Officer Boettger said yes. When Goodro asked why, Officer Boettger explained Goodro had a prior failure to appear, which suggested a history of "not showing up to court." Goodro said she did not remember ever being arrested for a failure to appear and asked for more details. Officer Boettger explained she did not have details; she only knew Goodro had a failure to appear. Goodro worried about going to jail without her medications and asked whether she could have her friend retrieve them from the car. Officer Boettger agreed. Officer Boettger handcuffed Goodro and escorted her to the patrol car. Officer Boettger then accompanied the friend to her car to retrieve

3

Goodro's medications. The friend handed Goodro's backpack to Officer Boettger. After searching the bag, Officer Boettger found Goodro's medication and driver's license, which reflected her legal name, Jennifer L. Goodro.

After they arrived at the jail, a booking deputy conducted an inventory search of Goodro's medications. The deputy discovered four small circular tablets in a plastic baggie. The pills did not have a corresponding prescription bottle. Officer Boettger asked Goodro what the pills were. Goodro did not provide a clear answer. Officer Boettger and the deputy later discovered these pills were clonazepam. Following the clonazepam discovery, the deputy told Goodro she needed to do a strip search of Goodro's person. Goodro complied. The deputy found a small plastic baggie containing a substance later found to be methamphetamine.

The State charged Goodro with possession of methamphetamine, a felony; possession of drug paraphernalia, a misdemeanor; and misdemeanor theft. Goodro moved to suppress the drugs and paraphernalia based on an illegal misdemeanor arrest. Goodro relied on K.S.A. 22-2401(c)(2)(A), which limits a law enforcement officer's authority to make an arrest for a misdemeanor offense to situations in which the officer has probable cause to believe the suspect will not be apprehended.

At the suppression hearing, Officer Boettger testified she arrested Goodro rather than issuing a notice to appear because Goodro provided an inaccurate last name, lived in a different city and had made statements about not being able to have transportation in order to make it back to Hutchinson, and previously failed to appear in court when required. The district court issued a written order denying Goodro's motion to suppress. The court found Officer Boettger had probable cause to arrest Goodro under K.S.A. 22-2401(c)(2)(A) because at the time of Goodro's arrest, the officer had the following information:  "The Defendant had not given her legal last name. The Defendant lived in

4

another city and had transportation problems. The Defendant had a prior theft conviction and a prior failure to appear."

After a bench trial based on stipulated facts, the district court found Goodro guilty of the methamphetamine charge, the paraphernalia charge, and the theft charge. The State agreed to dismiss the clonazepam charge. Goodro appealed and a panel of the Court of Appeals affirmed. *State v. Goodro*, No. 121,944, 2021 WL 2387722, at *4 (Kan. App. 2021) (unpublished opinion). Goodro petitioned for review of the panel's decision.

ANALYSIS

When a defendant moves to suppress evidence, the State bears the burden of proving that the search and seizure were lawful. K.S.A. 22-3216(2). An appellate court reviews a district court's decision on a motion to suppress in two steps. First, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence, which is legal and relevant evidence that a reasonable person would find sufficient to support a conclusion. Second, the appellate court examines the district court's ultimate legal conclusions de novo, without reweighing evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence. *State v. Guein*, 309 Kan. 1245, 1251-52, 444 P.3d 340 (2019).

We begin our analysis with the applicable statute, which permits a law enforcement officer to arrest a person if

- the officer has probable cause to believe that the person is committing or has committed a misdemeanor, and
- the officer has probable cause to believe that the person will be apprehended only if the person is immediately arrested. K.S.A. 22-2401(c)(2)(A).

5

Goodro agrees that Officer Boettger had probable cause to believe she committed misdemeanor theft but disagrees that Boettger had probable cause to believe she would be apprehended only if Boettger immediately arrested her.

The district court found Officer Boettger had probable cause to believe Goodro would not be apprehended unless arrested under K.S.A. 22-2401(c)(2)(A). At the time of Goodro's arrest, Officer Boettger knew Goodro had not given her legal name, Goodro lived in another city and had transportation problems, and Goodro had a prior theft conviction and a prior failure to appear. In affirming the district court's decision, the Court of Appeals panel focused on two facts: Goodro provided a misleading name and had no photo identification. *Goodro*, 2021 WL 2387722, at \*3. The panel held these two facts provided the basis for the probable cause determination because Officer Boettger's concerns "track[] with the assessment an objectively reasonable law enforcement officer would make of the circumstances." 2021 WL 2387722, at \*3. The panel reasoned:

"Here, Officer Boettger confronted a female shoplifter without any photo identification who had presented herself to store security agents as Jennifer Zorn. She offered that misleading name to Officer Boettger. A law enforcement database linked the name as a likely alias for Jennifer Goodro. But even with that information, an objectively reasonable law enforcement officer would have had no way of confirming that the suspect detained at the store was *in fact* either Jennifer Zorn or Jennifer Goodro. The suspect may have (mis)appropriated those names and possibly other personal information, such as an address or birthday, of the real Jennifer Goodro precisely to stymie store personnel or law enforcement officers in the event of her detention for shoplifting.

"Without some valid form of identification from the suspect, our hypothetical law enforcement officer would have had no reason, let alone probable cause, to believe issuing a notice to appear in the name of Jennifer Goodro would have been correct. The

6

officer would have had only the suspect's word as to her true name. And that's not good enough. So the officer would recognize that the suspect probably could not be later apprehended if she were not actually Jennifer Goodro. Accordingly, viewed objectively, Officer Boettger had sufficient reason to arrest Goodro and have her booked on the misdemeanor theft charge consistent with both K.S.A. 22-2401(c)(2) and the Fourth Amendment. The booking process presumably confirmed Goodro's identity and generated information, such as mugshots and fingerprints, that could be used to establish the true identity of an unknown or deceptive arrestee." 2021 WL 2387722, at *3.

The panel determined the transportation issues and the prior failure to appear charge were insufficient to form the officer's basis for probable cause. The panel noted (1) the statute is concerned with apprehending offenders, not their appearance in court; (2) if Goodro bonded out of jail, her transportation issues still could prevent her from going to court; (3) if Officer Boettger was satisfied she knew Goodro's identity and had an address for her, Goodro's claimed transportation issues would not justify the misdemeanor arrest; and (4) a single failure to appear charge at some indeterminate time is not sufficient on its own to furnish probable cause. 2021 WL 2387722, at *3.

Although we agree with the panel's conclusion that Officer Boettger had probable cause to believe Goodro would not be apprehended unless arrested under K.S.A. 22-2401(c)(2)(A), we disapprove of the panel's "divide and conquer" analysis of the facts in reaching that conclusion. A probable cause determination depends on the totality of the circumstances. See *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004) (citing *State v. Payne*, 273 Kan. 466, 474, 44 P.3d 419 [2002]). In general, when a motion to suppress stems from an alleged lack of probable cause to arrest, courts examine the totality of the circumstances from the standpoint of an objectively reasonable police officer. *State v. Ingram*, 279 Kan. 745, 752, 113 P.3d 228 (2005). When we examine the totality of the circumstances, we consider "'all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on

the issue of guilt.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004) (quoting *Abbott*, 277 Kan. 161, Syl. ¶ 3). As the United States Supreme Court has explained in discussing the totality-of-the circumstances approach to probable cause determinations:

> "'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *Illinois v. Gates*, 462 U.S. 213, 231-32, 103 S. Ct. 2317, 76 L. Ed. 2d 527, *reh'g denied* 463 U.S. 1237 (1983).

Our appellate courts have addressed probable cause in the context of K.S.A. 22-2401(c)(2)(A) only a handful of times. See *State v. Evans*, 219 Kan. 515, 548 P.2d 772 (1976); *State v. Latimer*, 9 Kan. App. 2d 728, 687 P.2d 648 (1984); *State v. Moats*, No. 97,027, 2008 WL 624572 (Kan. App. 2008) (unpublished opinion). Each decision relied on a totality of the circumstances analysis to determine whether probable cause existed to believe an offender would not later be apprehended.

In *Evans*, we found probable cause to support a reasonable belief the defendant would not be apprehended unless immediately arrested when the defendant revealed he was from out-of-state, he only was passing through, and he had immediate access to his car. 219 Kan. at 520-22. Officers stopped three men, including Evans, at a service station after receiving a call about an attempted drug theft at a pharmacy. The men matched the description provided. On questioning, the men gave conflicting stories about their jobs and their travel plans. The officers arrested the men and took them to the police station. Evans signed a consent form giving officers permission to search his car. Evans told officers the car belonged to him, and they would find drugs in the car during the search. The officers found drugs and the State charged Evans with various drug-related crimes.

8

Evans moved to suppress the drugs, arguing the officers obtained his consent to search the car after an illegal arrest. He alleged the arrest was illegal because the officers lacked probable cause to effect it. While Evans did not cite K.S.A. 22-2401(c)(2)(A) to support his illegal arrest claim, this court analyzed Evans' claim under the statute. We ultimately determined the totality of the facts available to the officers at the time of the arrest gave them probable cause to believe that the offenders committed misdemeanor attempted theft. We also determined the officers had probable cause at the time of arrest to believe the men would not be apprehended unless arrested. We based this finding on statements from the men revealing they were from out-of-state, they were only passing through, and they had immediate access to their car. 219 Kan. at 520-22.

In *Latimer*, a Court of Appeals panel held the aggregated acts of furnishing a false identity, flight from an employee, and lack of positive identification established probable cause to believe the defendant would not be apprehended unless immediately arrested. *Latimer*, 9 Kan. App. 2d at 730. Latimer stole a pizza from a Pizza Hut and employees contacted the police. One officer saw Steven Latimer fleeing on foot from a Pizza Hut employee. The officer stopped Latimer and asked his name. Latimer told the officer his name was Kenneth Q. Lindsay, and he provided two different home addresses. Latimer advised the officer that he had no valid identification on him. After a brief investigation, the officer arrested Latimer for the theft and transported him to the jail. The State charged Latimer with theft of services and obstructing the officer's official duty by providing a false name. The court convicted him of the obstruction charge. Latimer appealed.

Latimer argued his arrest for the theft was illegal under what is now K.S.A. 22-2401(c)(2)(A). He conceded the officer had probable cause to believe he committed the theft, but he argued the officer did not have probable cause to believe Latimer would not be apprehended unless arrested since he "supplied a plausible name and address to the

officer." 9 Kan. App. 2d at 730. The Court of Appeals rejected Latimer's argument. The panel noted Latimer did not have any identification on his person and provided a false name and two conflicting addresses, so the officer was unable to verify Latimer's identity in any way. The panel reasoned that to hold otherwise would allow any misdemeanor suspect to give a false identity to prevent the arrest. 9 Kan. App. 2d at 730.

In *Moats*, a Court of Appeals panel examined probable cause in the context of the criminal deprivation of property—a truck. The panel held there was probable cause to believe the defendant would not be apprehended unless immediately arrested when the defendant insisted that he owned a truck that did not belong to him, he attempted to hide the truck, and the truck was mobile. 2008 WL 624572, at *5. The defendant moved to suppress evidence linking him to other crimes that officers discovered after his arrest for criminal deprivation of property. In support of his motion to suppress, the defendant argued his misdemeanor arrest was illegal under K.S.A. 22-2401(c)(2)(A). The district court denied the motion, finding the officer had probable cause to believe Moats committed the misdemeanor offense (i.e., borrowing his friend's truck and failing to return it at the scheduled time) and probable cause to believe Moats would not be apprehended unless arrested. Moats challenged the latter finding on appeal. The Court of Appeals affirmed, concluding the officer had the requisite probable cause to believe Moats would not be apprehended unless arrested. The panel based its conclusion on evidence showing Moats was a potential flight risk, he insisted the truck belonged to him, he tried to hide the truck by taking it to a different location, and he could have fled in the truck at any point. 2008 WL 624572, at *5.

Goodro does not dispute that Officer Boettger knew the following information when Boettger effected the arrest: Boettger ran the name Zorn through dispatch and received conflicting information about Goodro's name, Goodro was unable to provide any documentation to verify her identity before the arrest, Goodro had a prior failure to

appear charge, Goodro lived in a different city and county, and Goodro did not drive herself from that city to Hutchinson.

Perhaps individually none of these factors would support probable cause to believe Goodro would not be apprehended unless Officer Boettger arrested her. But the probable-cause standard is a practical, commonsense, nontechnical, and fluid concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370-71, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). When we review the totality of the circumstances from the objective standpoint of a reasonable law enforcement officer, we find the undisputed factors presented here support the district court's practical, common-sense finding. The facts and circumstances confronting Boettger were enough to warrant a person of reasonable caution to believe that Goodro would not be apprehended if not immediately arrested. Although our legal conclusion depends on a totality of the circumstances analysis instead of the "divide and conquer" analysis used by the panel, we affirm.

Before closing, we briefly discuss the panel's comment, in dicta, about the exclusionary rule. At the district court, Goodro asserted the illegal arrest amounted to an unreasonable seizure violating the Fourth Amendment and section 15 of the Kansas Constitution Bill of Rights and, as a result, the drug evidence seized from that illegal seizure should be excluded. But Goodro cited no authority in her brief regarding why a violation of the misdemeanor arrest statute requires application of a constitutional remedy—i.e., the exclusionary rule. In dicta, the panel noted Goodro's failure to brief whether the exclusionary rule is a proper remedy and observed that it could dismiss Goodro's appeal for this reason alone. Instead, the panel chose to assume, without finding, that the exclusionary rule would apply if the panel found a violation of the misdemeanor arrest statute. *Goodro*, 2021 WL 2387722, at *2. While Goodro mentions

11

the panel's assumption in her petition for review, she provides no argument or authority to support the legal proposition that a violation of the arrest statute requires application of the exclusionary rule. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("Issues not adequately briefed are deemed waived or abandoned.").

Goodro did not substantively argue to the district court or to the Court of Appeals panel that the exclusionary rule would be a proper remedy for violating the misdemeanor arrest statute. The panel mentioned the issue in dicta but declined to address it based on Goodro's failure to provide a substantive argument. Goodro mentions the panel's dicta in her petition for review but again fails to substantively advocate for the exclusionary rule as a proper remedy for a K.S.A. 22-2401(c)(2)(A) violation. Given the lack of substantive argument, we specifically decline to consider the issue.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.