NOT DESIGNATED FOR PUBLICATION

No. 127,858

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

RAVEN DAKOTA ABBOTT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; AMY NORTON, judge. Oral argument held April 8, 2025. Opinion filed May 9, 2025. Reversed and remanded with directions.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellant.

*Kristen B. Patty*, of Wichita, for appellee.

Before HURST, P.J., MALONE and COBLE, JJ.

PER CURIAM: Raven Dakota Abbott was arrested after physically pushing the mother of his child and their roommate during an argument. While being arrested, officers found methamphetamine and a makeshift pipe in Abbott's belongings. He was later charged with possessing methamphetamine and drug paraphernalia as well as two counts of misdemeanor domestic battery.

Abbott moved to suppress the drug evidence seized during the search incident to arrest, arguing that the arrest was unlawful. After a hearing, the court agreed with Abbott,

1

finding his arrest unlawful and concluding that, as a result, the drug evidence "must be suppressed." The State filed this interlocutory appeal, arguing Abbott's arrest was lawful for multiple reasons. Because we find the district court rested its probable cause decision on the police officers' subjective views rather than the objective factual findings it also made during the suppression hearing, we reverse the district court's decision and remand with directions for the district court to deny the suppression motion.

FACTUAL AND PROCEDURAL BACKGROUND

In the early hours of the morning on February 8, 2024, law enforcement officers were dispatched to a home in Salina for what was described as "a physical domestic." Around 2:50 a.m., Officer Izaiah Grogan spoke with two women—referred to here under the pseudonyms Jane and Emily—who lived in the home. The two women also lived with Abbott—Jane's partner and the father of her infant and unborn child. Jane told Officer Grogan that she and Abbott had gotten into an argument over Abbott's job search and childcare issues. Jane said that after she had asked Abbott to leave several times, he had physically pushed her on his way out of the house.

During this conversation, Jane declined any medical attention and refused to allow Officer Grogan to enter the home. Officer Grogan did not observe any physical injuries to Jane nor any property damage to the house.

Meanwhile, Officer Derek Weis made contact with Abbott about "a house or two down" from the home. Abbott was carrying several bags and a blanket, and he told Officer Weis that "he was leaving." Abbott explained he had gotten into an argument about job issues and the stress of parenting with Jane—who he referred to as his "ex-girlfriend." He acknowledged that Jane had asked him to leave several times, but he had refused until she gave him his camera. Then, once he got his camera and was preparing to leave, Jane and Emily were both blocking his way and Emily was on the phone with the

2

police. So, Abbott told Officer Weis that "he had to physically move [Emily]" and he had "pushed [Jane] out of [his] way" when leaving the house.

Officer Weis then asked Abbott where he planned to go, and Abbott responded, "I don't know, maybe make my way back to where I was, unfortunately Wyoming"—which matched the identification he provided to the officer. Officer Weis clarified that he meant what Abbott planned to do that night, and Abbott replied that he did not have a plan except "[j]ust not be here."

After learning this information, Officer Weis arrested Abbott. During this arrest, Weis found "a makeshift pipe built out of a pill bottle" containing methamphetamine in Abbott's jacket pocket. The officer also found "two small plastic jewelry bags" containing "a white powdery residue" and a blue straw in his backpack. The State charged Abbott with possession of methamphetamine, possession of drug paraphernalia, and two counts of domestic battery.

Abbott moved to suppress the drug evidence, arguing that his arrest had been unlawful. At a hearing on Abbott's motion, both Officers Grogan and Weis testified. Officer Grogan testified that, based on the information he learned from Jane and Emily, the officers arrested Abbott because there was probable cause to believe Abbott had committed two counts of domestic battery under K.S.A. 21-5414(a)(2). Officer Grogan explained that the arrest was required by the Salina Police Department's Domestic Violence Policy, which mandated officers to arrest a person when there is probable cause to believe they committed any domestic violence offense. Officer Grogan also testified he was concerned that Abbott—who was from Wyoming—would not remain in Salina and there is "always a concern" in domestic violence situations a suspect may return to the residence and injure someone or cause property damage.

3

Like Officer Grogan, Officer Weis also explained it was the policy of the Salina Police Department that, "in any kind of domestic violence situation," officers are required to arrest a person if there is "any kind of proof" that they had committed a domestic violence offense. Accordingly, Officer Weis testified, Abbott had been arrested because there was probable cause to believe he had committed domestic battery against Jane and Emily.

After the officers' testimony, the State argued Abbott's arrest was lawful under either K.S.A. 22-2307(b)(1) or K.S.A. 22-2401(c)(2). That is, the State argued the arrest was lawful under K.S.A. 22-2307(b)(1) because the officers had probable cause to believe Abbott had committed two counts of domestic battery. It also argued the arrest was lawful under K.S.A. 22-2401(c)(2) because there was probable cause to believe Abbott had committed a misdemeanor and that, if he was not immediately arrested, he would not be apprehended or might return to the house and injure the women or cause property damage.

Abbott countered, arguing that K.S.A. 22-2307(b)(1) did not apply because it was merely a "procedural statute" that did not grant officers authority to make an arrest beyond the limits set by K.S.A. 22-2401(c)(2). And as for K.S.A. 22-2401(c)(2), Abbott conceded that the officers had probable cause to believe he had committed domestic battery—a class B person misdemeanor. He maintained, however, the officers did not have probable cause to satisfy the remaining requirements of K.S.A. 22-2401(c)(2)(A)-(C). Thus, Abbott asked the court to suppress the drug evidence "to prevent the same conduct from happening again [and to] have a deterrent effect on law enforcement."

After considering the parties' arguments, the district court agreed with Abbott, found his arrest unlawful, and concluded that, as a result, the drug evidence "must be suppressed." The court reasoned that K.S.A. 22-2307(b)(1) did not govern Abbott's arrest because while specific statutes usually supersede general statutes when they deal "*with*

4

*the same question*," the court found that K.S.A. 22-2401 and K.S.A. 22-2307 "do not address the same subject matter." The court explained that "K.S.A. 22-2401 outlines when an officer can make a warrantless arrest, and what probable cause is needed to do so" while K.S.A. 22-2307 simply "requires police departments to have uniform policies and procedures for handling a domestic violence call. . . . Nothing more, and nothing less."

As for K.S.A. 22-2401(c)(2), the court found that there was probable cause to believe Abbott had committed domestic battery by making "rude, angry, or insulting physical contact with [Jane] and [Emily] that evening." The court also found that "between the testimony of Officers Grogan and Weis, there was testimony that supports the State's position that the defendant would not be apprehended if not immediately arrested" and that "Officer Grogan was always concerned in a domestic situation that an offender would return to the scene to damage property or cause further harm to the victim."

Even so, the court concluded that Abbott's arrest was unlawful because the officers had testified "very clearly" that they had not arrested Abbott under K.S.A. 22-2401(c)(2) but had based their decision solely on K.S.A. 22-2307(b)(1) and the Salina Police Department's Domestic Violence Policy. The district court found that it was unclear if the officers were "familiar with the conditions precedent needed per K.S.A. 22-2401(c)(2)." And it emphasized that "[d]espite the testimony that could have led officers to forming probable cause that Mr. Abbott would not be apprehended if he was not arrested on-scene, this information did not factor into either officer's arrest decision." Accordingly, the court found Abbott's arrest was unlawful and concluded that, as a result, the drug evidence "must be suppressed."

The State filed an interlocutory appeal, challenging the district court's suppression order.

5

On appeal, the State seeks to reverse the district court's suppression order on three primary grounds. First, the State argues an improper misdemeanor arrest under K.S.A. 22-2401(c)(2) is not a violation of constitutional magnitude that should result in the suppression of evidence. The State also argues Abbott's arrest was required by K.S.A. 22-2307(b)(1) since Officers Grogan and Weis had probable cause to believe Abbott had committed two counts of domestic battery. Finally, it argues the district court made a mistake of law by applying a subjective rather than objective standard when reviewing whether the officers had probable cause under K.S.A. 22-2401(c)(2). That is, reviewing the totality of the circumstances, Abbott's arrest was lawful because there was probable cause to believe he had committed a misdemeanor and there was also probable cause to believe that, unless Abbott was immediately arrested, he would not be apprehended, might injure Jane or Emily, or might cause property damage. Naturally, Abbott disagrees and believes the district court correctly suppressed the evidence.

*First, we acknowledge proper jurisdiction over this interlocutory appeal.*

The State argues, and Abbott does not refute, that we possess jurisdiction to hear this interlocutory appeal. Whether appellate jurisdiction exists is a question of law over which we have unlimited review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

"In Kansas, the right to appeal is entirely statutory and, as a general rule, appellate courts may exercise jurisdiction only when authorized to do so by statute." *State v. McCroy*, 313 Kan. 531, 534, 486 P.3d 618 (2021). Additionally, the State's authority to appeal in a criminal case is limited by statute to specified circumstances. *State v. Mulleneaux*, 316 Kan. 75, 80, 512 P.3d 1147 (2022).

6

Here, the State appropriately relies upon K.S.A. 22-3603 as the basis for its interlocutory appeal. Under this statute, the prosecution may file an interlocutory appeal from a pretrial order suppressing evidence which "'substantially impair[s] the [S]tate's ability to prosecute the case.'" *State v. Myers*, 314 Kan. 360, 365, 499 P.3d 1111 (2021) (quoting *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 [1984]). The order "excluding evidence need not completely prevent the State from obtaining a conviction to substantially impair its ability to prosecute" its case. *Myers*, 314 Kan. at 366. But the State must be prepared to make a threshold showing of a substantial impairment on order of the appellate court or when appellate jurisdiction is challenged by the appellee. See *State v. Mburu*, 51 Kan. App. 2d 266, 270, 346 P.3d 1086 (2015).

We have no challenge to appellate jurisdiction by Abbott, as he does not address jurisdiction in his briefing. And because the district court suppressed the use of the methamphetamine and drug paraphernalia as evidence and disallowed the officers' testimony regarding their recovery of the drugs and drug paraphernalia, the State had no way to prove the charges of possession of methamphetamine or possession of drug paraphernalia. Under these circumstances, we have no trouble concluding that the State's ability to prosecute its case had been substantially impaired by the suppression of evidence, giving us jurisdiction to entertain the State's interlocutory appeal under K.S.A. 22-3603.

*The district court erred in suppressing the drug evidence because although Abbott's arrest was lawful under K.S.A. 22-2401(c)(2)(A) based on the factual findings made by the district court, the court applied the wrong legal standard in its probable cause analysis.*

An appellate court reviews a district court's decision on a motion to suppress in two steps. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022). We first examine the district court's factual findings to determine whether they are supported by substantial competent evidence, which is legal and relevant evidence that a reasonable person would

7

find sufficient to support a conclusion. *State v. Guein*, 309 Kan. 1245, 1251-52, 444 P.3d 340 (2019). We then review the district court's ultimate legal conclusions de novo, without reweighing evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence. 309 Kan. at 1252. When the significant facts are not in dispute, whether to grant or deny a suppression motion presents a question of law over which the appellate court has unlimited review. 309 Kan. at 1252.

In Kansas, an officer's authority to make an arrest is generally defined by K.S.A. 22-2401. As one would expect, this provision allows an officer to arrest someone with a valid warrant. K.S.A. 22-2401(a). But K.S.A. 22-2401 also allows an officer to arrest someone without a warrant in certain circumstances. K.S.A. 22-2401(b)-(d). For example, an officer may make a warrantless arrest if he or she has probable cause to believe that a person has committed a felony. K.S.A. 22-2401(c)(1). Applicable here, when an officer has probable cause to believe that a person has committed a misdemeanor, the officer may make a warrantless arrest if there is also probable cause to believe:

- The person "will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested" under K.S.A. 22-2401(c)(2)(A);
- The person "may cause injury to self or others or damage to property unless immediately arrested" under K.S.A. 22-2401(c)(2)(B); or
- The person "has intentionally inflicted bodily harm to another person." K.S.A. 22-2401(c)(2)(C).

The State argues that Abbott's arrest was lawful under the first two subsections, K.S.A. 22-2401(c)(2)(A) and (B). It advances two arguments, each building on the other, to support this conclusion. First, the State argues that the district court applied the wrong, subjective standard in determining whether Abbott's arrest was lawful. Then, the State

8

contends that under the proper objective standard, there was probable cause to believe that, unless he was immediately arrested, Abbott would not be apprehended, might cause injury to others, or might cause property damage under K.S.A. 22-2401(c)(2)(A) and (B). The parties implicitly acknowledge that K.S.A. 22-2401(c)(2)(C) is inapplicable here.

Abbott agrees that Officers Grogan and Weis had probable cause to believe he committed two misdemeanor counts of domestic battery under K.S.A. 21-5414(a)(2). But he disputes the officers also had probable cause to believe he would not be apprehended, might injure someone, or might cause property damage unless he was immediately arrested as required by K.S.A. 22-2401(c)(2)(A) and (B) to validate his arrest.

In general, when determining whether an arrest was supported by probable cause, courts examine the totality of the circumstances from the standpoint of an objectively reasonable police officer. *State v. Ingram*, 279 Kan. 745, 752, 113 P.3d 228 (2005). This includes the information known to the officer at the time of the arrest, as well as fair inferences drawn from that information. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). The Kansas Supreme Court has described this standard as "a practical, commonsense, nontechnical, and fluid concept that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Goodro*, 315 Kan. at 243. But again, we emphasize that "Kansas courts do not assess probable cause based on an officer's *subjective* belief. Instead, courts consider how an *objectively* reasonable law enforcement officer would look at the known circumstances." (Emphases added.) *State v. Helfrich*, No. 123,153, 2022 WL 68126, at *4 (Kan. App. 2022) (unpublished opinion); see *State v. Greever*, 286 Kan. 124, 140, 183 P.3d 788 (2008).

Although we acknowledge the district court's decision was reasoned and thoughtful, the State is correct that the court erred by applying the wrong standard when determining whether there was probable cause to justify Abbott's arrest. The district court

applied a subjective standard—evaluating Officers Grogan and Weis' conduct based on their subjective reasoning and motives—rather than examining the totality of the circumstances from the standpoint of an objectively reasonable officer. That is, the court found that the officers' subjective belief rendered Abbott's arrest unlawful "[d]espite the testimony that could have led [them] to forming probable cause that Mr. Abbott would not be apprehended if he was not arrested on-scene."

But our thorough review of the district court's order shows that its subjective analysis is immaterial, because the court also made the necessary objective factual findings necessary to support the denial of the motion to suppress. The district court evaluated Officers Grogan and Weis' testimony and found support for the "State's position that [Abbott] would not be apprehended if not immediately arrested," thus indorsing his arrest under K.S.A. 22-2401(c)(2)(A). The district court found that Officer Weis first made contact with Abbott several houses down from his home, as he "was walking away from the call location, and that he had at least one bag of personal items and property with him." Abbott had an identification issued by Wyoming, and when asked what his plan was "Abbott responded that he was not sure and might head back to Wyoming." The district court made note that Abbott had no other residence in Salina aside from the home he was leaving, and he "admitted to police he had been told to leave by [Jane] and [Emily] and was not welcome back." And the court observed that Abbott had referred to Jane as "'his ex,'" which indicated "a severed relationship between the two."

Finally, the district court credited Officer Grogan's testimony that he was concerned Abbott "would leave Salina and return to Wyoming." These factual findings, when viewed from the standpoint of an objectively reasonable police officer, demonstrate probable cause existed to find Abbott would not be apprehended if not immediately arrested under K.S.A. 22-2401(c)(2)(A). See *State v. Evans*, 219 Kan. 515, 521-22, 548 P.2d 772 (1976) (finding probable cause to support a reasonable belief the defendant

10

would not be apprehended unless immediately arrested when the defendant revealed he was from out-of-state, he was only passing through, and he had immediate access to his car).

Additionally, the district court included in its order a short finding that Officer Grogan testified he was "always concerned in a domestic situation that an offender would return to the scene to damage property or cause further harm to the victim." This factual finding could provide the officers an alternative basis for probable cause for Abbott's warrantless arrest under K.S.A. 22-2401(c)(2)(B) ("may cause injury to self or others or damage to property unless immediately arrested"). But because this factual finding is sparse, and the findings under K.S.A. 22-2401(c)(2)(A) are sufficient, we need not rely upon this factual finding.

Immediately following its objective findings, the district court went on to discuss that, despite those findings, Officers Grogan and Weis testified they based their arrest of Abbott on subjective factors. But again, this is not the appropriate legal standard by which we judge probable cause determinations. See *State v. McCarter*, No. 126,449, 2024 WL 4647684, at *6 (Kan. App. 2024) (unpublished opinion) ("The temptation to judge the reasonableness of a stop by the officer's clear intention and motivation is undeniable—but that is not the appropriate standard.").

Given the clear objective factual findings included in the district court's decision, which were based upon the testimony provided during the suppression hearing, an objectively reasonable officer could infer that Abbott would strike out for Wyoming, making his apprehension unlikely. Thus, there was probable cause for an objectively reasonable officer to believe that, unless Abbott was immediately arrested, he would not be apprehended. And, in turn, because Abbott's arrest was lawful under K.S.A. 22-2401(c)(2)(A), we reverse the district court's suppression order and remand with

11

directions to the district court to deny the motion to suppress, because the district court has already made the factual findings necessary to support its denial.

*We do not reach the issue of whether Abbott's arrest was lawful under K.S.A. 22-2307(b)(1).*

As discussed above, in its suppression order, the district court found that K.S.A. 22-2307 was not the controlling statute in this case, but only directed police departments to establish written policies and did not have any effect on the standards for a misdemeanor arrest under K.S.A. 22-2401(c)(2). The State challenges this portion of the district court's suppression order by arguing that, contrary to the court's finding, K.S.A. 22-2307(b)(1) grants law enforcement officers independent authority to make a warrantless arrest in domestic-violence situations beyond the limits set by K.S.A. 22-2401(c)(2).

Because we reverse the district court's decision to grant the motion to suppress and instruct the denial of the motion on other grounds, we decline to address this issue.

*This court need not determine whether an unlawful arrest under Kansas law triggers the constitutional exclusionary rule.*

Finally, the State challenges the district court's suppression order by arguing that it erred in finding that an improper misdemeanor arrest under K.S.A. 22-2401(c)(2) required application of the constitutional exclusionary rule. This argument was not presented to the district court, although the State now argues exceptions apply to permit us to review this unpreserved argument for the first time on appeal. See *State v. Gray,* 311 Kan. 164, 170, 459 P.3d 165 (2020). But because we find Abbott's arrest was lawful, we need not address this issue.

Reversed and remanded with directions.

12