NOT DESIGNATED FOR PUBLICATION

No. 128,171

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

WILLIAM RICHARD SOBEK,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; WAYNE SMITH, magistrate judge. Submitted without oral argument. Opinion filed August 15, 2025. Vacated and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Christopher T. Brown*, of Gyllenborg & Brown, P.A., of Overland Park, for appellee.

Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.

PER CURIAM: In this interlocutory appeal, the State challenges the district court's suppression of William Richard Sobek's blood alcohol test results. Although Sobek consented to a blood draw test after being arrested by the Kansas Highway Patrol, the district court later suppressed the test results. Based on our review of the record on appeal, we find that the district court misinterpreted the requirements of K.S.A. 8-1001(b)(1) in suppressing the results. Thus, we vacate the suppression order, and we remand this case to the district court for further proceedings to rule on Sobek's motion to suppress applying the appropriate test for probable cause to arrest.

1

Around 5:07 p.m. on August 3, 2023, Lieutenant Gustavo Ramirez of the Kansas Highway Patrol responded to the scene of an accident on I-35 in Johnson County. Upon responding to the scene, Lieutenant Ramirez found that a Dodge Ram pickup truck—driven by Sobek—had rear-ended a Ford Edge. Sobek told the trooper that he was not able to stop when traffic slowed down in front of him. Lieutenant Ramirez subsequently confirmed that the damage to Sobek's pickup truck was on the front while the damage to the other vehicle was on its back bumper as well as the left rear quarter panel.

While speaking to Sobek, Lieutenant Ramirez noticed the odor of alcohol emanating from both Sobek's person and from his pickup truck. The trooper also observed that Sobek's speech was "delayed," "slurred," and "fragmented" while answering his questions. The trooper also witnessed that Sobek had bloodshot eyes. When Lieutenant Ramirez asked him if he had consumed any alcohol that day, Sobek responded that he was traveling from the local American Legion post and that he consumed an alcoholic beverage that morning.

As a result of his preliminary investigation, Lieutenant Ramirez asked Sobek to get out of his pickup truck. When Lieutenant Ramirez asked Sobek about his physical condition, Sobek explained that he used a cane for assistance getting around. According to Sobek, he had suffered injuries to his knees during the Vietnam war. After speaking further with Sobek, the trooper evidently performed a horizontal gaze nystagmus test (HGN) but decided against performing standard field sobriety tests because of Sobek's disability. Lieutenant Ramirez then attempted to administer a preliminary breath test at the scene of the accident. But Sobek failed to provide a sufficient sample.

Based on his observations—in light of his training and experience—Lieutenant Ramirez arrested Sobek. After being taken into custody, Sobek voluntarily consented to a

blood draw to determine his blood alcohol content. It is undisputed that the results of the blood test showed that Sobek's blood alcohol content was .161, which is well above the .08 legal limit in Kansas. As a result, the State charged Sobek with driving under the influence in violation of K.S.A. 8-1567(a)(2)-(3), K.S.A. 8-1567(b)(1)(B), and K.S.A. 21-6602(a)(1). In addition, the State charged Sobek with a traffic infraction for following too closely under K.S.A. 8-1523.

Prior to trial, Sobek moved to suppress the results of the blood alcohol test. The district court conducted an evidentiary hearing on August 22, 2024. At the hearing, Lieutenant Ramirez testified about his investigation of the accident and why he suspected that Sobek may have been driving under the influence of alcohol. He then explained his investigation methodology through the following steps:

> "[A DUI investigation] can begin with vehicle-in-motion clues, and among those are failing to maintain, driving below the posted speed limit, but also can include vehicles that have been involved in collisions.
>
> "The next step in a DUI investigation would be personal contact clues, and that could be anything from making visual observations of a person who's perhaps speaking with a slurred tone of speech, [or] a delayed type of speech. . . . I can observe physical characteristics such as the emission of a consumed alcoholic beverage. They can also have bloodshot, [or] droopy eyes.
>
> "And after that stage, we go into what we refer to as pre-arrest screening, and that would be the administration of the standardized field sobriety tests."

Lieutenant Ramirez further testified about the observations he made at the scene of the accident in addition to those made from speaking with Sobek. In particular, the trooper stated that Sobek's speech was slurred "throughout [their] contact" as well as the fact that his answers to questions were fragmented or nonresponsive. The trooper also affirmed that both Sobek and his pickup truck smelled of alcohol. Likewise, Sobek

3

admitted to Lieutenant Ramirez that he had consumed one alcoholic drink earlier that morning.

Lieutenant Ramirez additionally testified that he did not use traditional field sobriety tests because of Sobek's physical condition. He clarified that Sobek was originally asked to take a preliminary breath test. Yet Sobek could not provide an adequate breath sample. Still, based on the totality of the circumstances, Lieutenant Ramirez made the decision to arrest Sobek. Afterward, Sobek consented to the blood test which revealed that his blood alcohol level was above the legal limit. Even though Lieutenant Ramirez candidly acknowledged that he administered an HGN test, he did not testify regarding the results nor did he testify that he relied on the test in deciding to arrest Sobek.

After hearing Lieutenant Ramirez' testimony, the district court found that the trooper's "action[s] were proper and understandable . . . where this particular [d]efendant could not do the physical tests based upon his injuries." Even so, the district court granted Sobek's motion to suppress. In support of its decision, the district court explained:

> "K.S.A. 8-1001[b] says you need—for probable cause[—] . . . enough to verify that there is a DUI where you can require one or more test[s]. It appears you need more than one or more test[s]. Correct me if I am wrong on that.

> "But in this situation, the only test involved . . . outside of the odor and slurred speech was the inadmissible tests."

On August 29, 2024, the district court entered a written order incorporating its bench ruling by reference. Thereafter, the State filed a timely notice of interlocutory appeal under K.S.A. 22-3602 and K.S.A. 22-3603.

4

*Requirements of K.S.A. 8-1001(b)(1)*

On appeal, the State contends that the district court improperly interpreted the requirements of K.S.A. 8-1001(b)(1) in suppressing the results of Sobek's blood alcohol test. In particular, the State argues that the district court erred as a matter of law in concluding that probable cause to arrest for a DUI requires the administration of one or more field sobriety tests. Sobek responds by arguing that while the district court may have improperly interpreted K.S.A. 8-1001(b)(1), it still correctly concluded that Lieutenant Ramirez lacked probable cause to arrest Sobek. Moreover, Sobek concedes that the suppression of the results of the blood test substantially impairs the State's ability to prosecute this case.

"When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015). Likewise, "an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021). Legislative intent is discerned through the language actually used and giving words their ordinary meanings. *State v. Soto*, 310 Kan. 242, 252, 445 P.3d 1161 (2019).

K.S.A. 8-1001 provides, in part, the following:

"(a) Any person who operates or attempts to operate a vehicle within this state may be requested, subject to the provisions of this article, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing shall include all quantitative and qualitative tests for alcohol and drugs. The test must be administered at the direction of a law enforcement officer,

and the law enforcement officer shall determine which type of test is to be conducted or requested.

"(b)(1) One or more tests may be required of a person when, at the time of the request, a law enforcement officer has probable cause to believe the person has committed a [DUI] violation . . . and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death.

(2) The law enforcement officer directing administration of the test or tests may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the investigation or arrest."

On its face, the statute refers to requests to drivers by law enforcement officers "to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 8-1001(a). The statute then goes on to provide that "[o]ne or more tests may be required of a person when . . . a law enforcement officer has probable cause to believe the person has committed a [DUI] violation . . . and . . . [t]he person has been arrested or otherwise taken into custody . . . or . . . the person has been involved in a motor vehicle accident or collision . . . ." K.S.A. 8-1001(b)(1)(A)-(B). Notably, field sobriety tests are not mentioned in the statute.

Therefore, we find that the district court "read[] something into the statute that is not readily found in its words." See *In re M.M.*, 312 Kan. at 874. Because of this misinterpretation of the law, we conclude that the district court's suppression order must be vacated since the question of suppression—in this case—hinges on the district court's determination of probable cause. Hence, as explained below, we find that it is appropriate to remand this case to the district court.

*Probable Cause to Arrest*

In its brief, the State anticipates Sobek's argument that the district court misinterpreted K.S.A. 8-1001(b)(1), but that it still correctly determined that Lieutenant Ramirez lacked probable cause to arrest Sobek. Indeed, Sobek makes this argument. As such, the State argues that if the appropriate test is applied to determine probable cause to arrest based on the totality of the circumstances, Lieutenant Ramirez had probable cause to arrest Sobek and his subsequent consent to a blood test was valid.

Law enforcement officers have probable cause to arrest if they have a "'reasonable belief, drawn from the totality of information'"—and from the reasonable inferences that could be drawn from that information—"'that the defendant has committed or is committing a specific crime.'" *State v. Frantz*, 316 Kan. 708, 747, 521 P.3d 1113 (2022). Likewise, in determining whether probable cause exists, courts must "examine the totality of the circumstances from the standpoint of an objectively reasonable police officer" including "'all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Goodro*, 315 Kan. 235, 240, 506 P.3d 918 (2022). Thus, the question presented in this case is whether—based on all of the information known to Lieutenant Ramirez and the fair inferences that can be made from that information—an objectively reasonable law enforcement officer could believe that Sobek committed the crime of driving under the influence of alcohol.

Based on our review of the record on appeal, we find that there is sufficient evidence that could support the conclusion that Lieutenant Ramirez had probable cause to arrest Sobek upon application of the correct test. This evidence includes Lieutenant Ramirez' training and experience in investigating numerous DUI incidents; Sobek's inability to stop when the traffic on I-35 slowed down in front of him, causing him to crash his pickup into the rear of the vehicle in front of him; the odor of alcohol emanating

7

from both Sobek's person and his pickup truck; Sobek's slurred and fragmented speech as well as his bloodshot eyes; and his admission to consuming alcohol earlier in the day. Of course, Sobek should have the opportunity to challenge this evidence or to present additional evidence to assist the district court in determining whether Lieutenant Ramirez had probable cause to arrest him.

CONCLUSION

Accordingly, we find that the district court misinterpreted the provisions of K.S.A. 8-1001(b)(1) which caused it to apply an incorrect standard in determining whether Lieutenant Ramirez had probable cause to arrest Sobek for DUI. Under these circumstances, we find that it is appropriate to remand this case to the district court to first determine the question of probable cause under the appropriate standard. Only then will the district court be able to properly rule on the motion to suppress. Thus, we vacate the district court's order of suppression and remand this case to the district court for further proceedings consistent with this opinion.

Vacated and remanded for further proceedings.