NOT DESIGNATED FOR PUBLICATION

No. 127,049

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ANDRES GARZA-CABRAL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed August 15, 2025. Affirmed.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Christopher S. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., HILL and WARNER, JJ.

PER CURIAM: This is the State's interlocutory appeal of a district court's suppression of evidence obtained by the police after a traffic stop. The court had concluded that the police lacked sufficient reasonable suspicion to make that stop. Our review of the record reveals that substantial evidence supports the court's fact-findings, and we find no legal errors by the court. Thus, we affirm.

1

*After a shooting, the police look for a possible suspect.*

Late one evening in August 2021, Wichita police officers received a dispatcher report of a shooting. At the scene, a witness described a possible suspect—referred to only as "Draco." Officers had learned that the suspect was possibly a male Hispanic in his late teens. Witnesses also provided officers with a possible address for the suspect as well as a possible vehicle description.

In response, Officer Drake Kreifels then drove to the suspected address and got out of his car to investigate. While surveilling, Kreifels saw a person walking back and forth from the house carrying personal belongings and putting them in a car. Kreifels testified that he did not engage with the suspect because he was waiting for help to assist him in a felony car stop once that person got in the car. Kreifels could not recall how long he watched the suspect's house nor when he called for help.

The only information provided to Kreifels was that the suspect was a male Hispanic in his late teens. Kreifels testified that he had the suspect's photograph—provided by law enforcement from social media—but Kreifels did not include or mention the photograph in his report. Kreifels described the person that he observed to be a thin-built male but did not identify the person's race or ethnicity.

Kreifels and backup units conducted a "felony car stop" once the person got in his car and began to drive away from the house. The only purpose for the stop, Kreifels testified, was to determine the person's possible involvement in the shooting earlier that evening. Officers arrested the driver—who was later identified as Andres Garza-Cabral—and took him into custody. While searching Garza-Cabral's car, officers found a few open beer cans, some marijuana, and drug paraphernalia.

While in custody, Garza-Cabral confessed to his involvement in the shooting earlier that evening. He told officers that while driving his girlfriend and her friend home, two men were waiting on the friend's porch. An altercation ensued which led to Garza-Cabral firing his gun in self-defense, harming his girlfriend and the two men.

The State charged Garza-Cabral with three counts of aggravated battery; one count of criminal possession of a weapon, a class A nonperson misdemeanor; and one count of transporting an open container of alcohol.

*The district court suppresses the evidence.*

Garza-Cabral moved to suppress, arguing that the officers lacked reasonable suspicion to justify the traffic stop. At the motion hearing, the district court heard testimony from Officer Kreifels and then took the matter under advisement. Later, at a separate hearing, the court granted Garza-Cabral's motion. In its ruling, the district court made several factual findings focusing on the limited corroborating evidence:

> "[Officer Kreifels] had contact with this defendant, he conducted a vehicle stop, not because of any traffic infraction but because this officer had information regarding a suspect vehicle, information regarding a suspect person, and the crimes that were being investigated involved the use of a firearm. And the information that this officer had indicated that the defendant was in the suspect vehicle and he was the suspect person and the crime that he was involved in allegedly was a firearm. So—and the defendant was the only person in the car."

Then, the district court pointed out what was missing from the evidence submitted by the State that would legally support the stop. Using a series of questions, the court highlighted what was unknown:

3

"What's the description of the suspect vehicle that this cop used as the basis to make the stop? And what was the specific information this officer had that this defendant was the suspect person? Based on what? A description of him? And Mr. Garza-Cabral I believe is a Hispanic male, but was that the description, a Hispanic male? Was there a name attached to it and the crime involved use of a firearm? . . . But, the law says the knowledge of one law enforcement officer is imputed to another. So, this officer didn't know what the information was, he just was under the understanding it matched the suspect vehicle. Well, what was the information of the suspect vehicle? What type of vehicle? What color? Was it five years ago that it happened? Was it recent that it happened? So, the stop's bad."

Accordingly, the district court found that the officers lacked reasonable suspicion to conduct the traffic stop and suppressed the evidence. The district court declined to rule on whether Garza-Cabral's confession should be suppressed and allowed the State time to decide whether it would appeal the ruling or litigate the exclusionary rule as applied to Garza-Cabral's confession. The State filed an interlocutory appeal from the district court's suppression of the evidence.

*How we approach this case.*

Our standard of review of the questions presented here is whether substantial competent evidence supports the district court's factual findings and whether those factual findings support the court's legal conclusions.

Our review of the record reveals that the district court's factual findings are supported by substantial competent evidence. The State bore the burden of producing evidence at the suppression hearing to establish by a preponderance of the evidence that the traffic stop was supported by reasonable suspicion.

4

Because the suppression order here substantially impairs the State's ability to prosecute some charges, we have jurisdiction to consider the State's interlocutory appeal.

*Some fundamental points of law guide us.*

Individuals have the right to be free from unreasonable searches and seizures under both the United States and the Kansas Constitution. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. The standard for determining reasonableness rests on the specific search or seizure's context, requiring only a "'minimum level of objective justification'" which is "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *State v. Thomas*, 291 Kan. 676, 687-88, 246 P.3d 678 (2011). A court considers the officer's "particularized and objective basis for suspecting the particular person stopped" is committing a crime. *Prado Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). Though, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60-61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters, (2) investigatory detentions, (3) public safety stops, and (4) arrests. *State v. Guein*, 309 Kan. 1245, 1253, 444 P.3d 340 (2019).

A traffic stop is equivalent to a seizure under the Fourth Amendment to the United States Constitution, requiring an officer to have reasonable suspicion that an offense is occurring, has occurred, or is about to occur. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014); *State v. Pollman*, 286 Kan. 881, 889-90, 190 P.3d

5

234 (2008). Once the officer has reasonable and articulable suspicion to stop the vehicle, that stop must be reasonably tailored to the investigation of the suspected violation. See *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018).

The exclusionary rule is the judicially created enforcement mechanism under the Fourth Amendment and operates as "a deterrent barring the introduction of evidence obtained in violation of the Fourth Amendment in criminal prosecutions." *State v. Cline*, 63 Kan. App. 2d 167, 182, 526 P.3d 686 (2023). The rule "only applies when deterrence can be achieved," and "is not the defendant's personal constitutional right." *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010). There are three exceptions to the exclusionary rule which allow for the admission of evidence, despite being obtained in violation of the Fourth Amendment. See, e.g., *Daniel*, 291 Kan. at 497-500 (good-faith exception); *State v. Tatro*, 310 Kan. 263, 445 P.3d 173 (2019) (attenuation doctrine); *Cline*, 63 Kan. App. 2d at 185 (inevitable discovery).

*A ruling on a motion to suppress is made in two steps.*

Any review of rulings on a motion to suppress seeks to determine whether the district court's findings of fact were supported by substantial competent evidence, and then a court makes a de novo review of the district court's legal conclusions. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). Substantial competent evidence is "'that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved.'" *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019). The State bears the burden to prove that both the search and seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

*Officers need minimal justification to initiate a traffic stop.*

There is some common sense in the law of traffic stops because the subject of an investigation can merely drive away. Reasonable suspicion demands that law enforcement possess minimal justification for initiating a traffic stop. Deference must be given to a trained officer's "'ability to distinguish between innocent and suspicious circumstances,'" not evaluating whether particular conduct is "'innocent' or 'guilty,'" but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017); see also *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Whether the officer's conduct was reasonable is considered in the context of common sense and ordinary human experience under the circumstances. *Sharp*, 305 Kan. at 1081.

We will use a "totality of the circumstances" approach to considering the events and facts known to the officer at the time. Such an inquiry necessarily "precludes a 'divide-and-conquer analysis' under which factors that are 'readily susceptible to an innocent explanation [are] entitled to "no weight."'" *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d 320 (2011) (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 [2002]). This approach also deters the ability of "law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action." *Sharp*, 305 Kan. at 1084.

*The court properly suppressed the evidence.*

The district court suppressed the evidence found during the traffic stop of Garza-Cabral's vehicle because the officers lacked reasonable suspicion that Garza-Cabral committed, was committing, or was about to commit a crime. The court

mainly questioned the lack of corroborating and supporting evidence of the officer's suspicion that Garza-Cabral committed a crime.

At the suppression hearing, Officer Kreifels could not recall the description of the vehicle or how he received the information. Kreifels could not recall who gave him either a description or a photograph of the suspect. Kreifels could not identify any description of the person that he observed at the suspect's residence beyond a taller, thin-built man. He also could not recall how long he watched the suspect's residence or when he requested help.

Kreifels did not investigate who the owner or occupants of that house were. Kreifels testified that this was because of limited resources that evening which did not allow him to "conduct additional intel on the address due to the threat to the community that this person had already shot other people that night, so there was a priority to get to the residence, establish surveillance to ensure that there were no other shooting victims."

When the police officer chose to make contact with this man by making a traffic stop rather than approaching him and asking questions, the district court was required to analyze the encounter as it would for any other traffic stop. This was not a car chase. Nor was this a possible suspect fleeing from the scene of the shooting. He simply got into his car after putting some items into it and drove off. Considering all the circumstances here, the district court correctly held that there was no reasonable suspicion to stop this car.

*The State's three arguments are unpersuasive.*

The State argues that the district court misstated the evidence in its ruling, and therefore—because of these misstatements—we should overturn its ruling. In

8

its first argument, the State claims that the district court "erred by failing to recognize that the suspect was, in fact, described as a Hispanic male." But the State misses the mark. The district court questioned the description of the person that Kreifels *observed*, not the description of the suspect obtained from witnesses. In his testimony, Kreifels stated that he could not identify the race or ethnicity of the person that he observed. The only description that Kreifels received about the suspect was his ethnicity, gender, and possible age range. While watching the suspect's residence, Kreifels only corroborated that the person was male. The district court was therefore correct that there was never any corroboration of the provided description of the suspect compared to the person that Kreifels observed.

For its second argument, the State claims that the district court erred by stating that "Officer Kreifels 'didn't know what the [vehicle] information was.'" The district court did not claim that Officer Kreifels lacked any description of the suspect's vehicle. Instead, the district court emphasized the State's failure to produce evidence supporting Officer Kreifels' testimony, specifically to fill in the gaps in his recollection. Kreifels only testified that he was provided with a description of the suspect's vehicle but could not recall what that description was or if it matched Garza-Cabral's car. So the district court did not err by stating that Kreifels "didn't know what the information was, he just was under the understanding it matched the suspect vehicle. Well, what was the information of the suspect vehicle? What type of vehicle? What color?" The State failed to carry its burden to produce evidence or testimony that established reasonable suspicion.

In its final argument, the State claims that the "district court was operating under the mistaken belief that there was no evidence indicating when the shooting that police were investigating occurred." The State's argument centers on the last part of the district court's ruling when it stated, "Was it five years ago that it happened? Was it recent that it happened?" In the State's opinion, "[t]he court's

9

suggestion that the shooting could have happened years earlier is not only disingenuous, it is directly contrary to the record." The State is alluding to two questions posed by the court after the court's discussion of the lack of evidence supporting a vehicle description. It is unclear what the court meant to convey by posing the questions—whether emphasizing the lack of corroborating evidence or misstating the facts as the State suggests.

Whatever the district court meant by posing the two questions is not dispositive. We will not reweigh evidence, assess the credibility of witnesses, or resolve conflicting evidence. See *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Substantial competent evidence supported the district court's factual findings that Officer Kreifels lacked reasonable suspicion to initiate a traffic stop based on an unspecified description of Garza-Cabral's vehicle, a possible photograph that was never included in officers' reports or at the suppression hearing, and an uncorroborated physical description of the suspect. In ruling on this motion, the district court only had the evidence provided by the State. Therefore, the district court's factual findings indeed support the legal conclusion that officers lacked reasonable suspicion to stop Garza-Cabral's car.

This officer chose a car stop to pursue this investigation. So the law regulating car stops controls. Given this record, we agree with the district court. There was no reasonable suspicion for this car stop. We uphold the ruling suppressing the evidence.

Affirmed.